Bergax, J.
Whatever may be the reasons of policy leading the Legislature to prescribe the display of price signs and to regulate price advertising of liquor, it seems obvious from a reading of the Alcoholic Beverage Control Law as a whole that the Legislature has not attempted to promote temperance by making alcoholic beverages more expensive to New York consumers.
In the same section of the same statute (§ 101-b, subd. 1) which states (as does § 2) that one of the purposes of the act is “ to promote temperance ”, there is a mandatory requirement that manufacturers of brand liquor shall file with the Authority a schedule showing that the bottle and case “ price ” of liquor to New York wholesalers is no higher than the “ lowest price ” at which it is sold to wholesalers or public agencies anywhere in the United States (§ 101-b, subd. 3, par. [d]).
The section itself deals, as its heading states, with ‘ ‘ discriminations ” and in text, expresses in very plain language a policy in New York to prevent discrimination against New York consumers and to keep prices of liquor as low in New York as the statute can do it for the benefit of consumers in this State.
This general price policy was enacted in 1964 (ch. 531) in response to an investigation under the direction of the Governor which revealed that the New York consumer was paying from 50 cents to $1.50 more for each fifth of whiskey than the price at which it was available in at least seven freer price markets (Moreland Commission Report No. 1, p. 3 [1964]).
This study led the Governor to recommend to the Legislature a change in the prior rigid public price management of liquor. The Governor estimated by that mechanism a “ surcharge ” had been imposed on New York consumers of liquor of $150 million a year (Message, Feb. 10, 1964). This, of course, went to the liquor industry.
The present statutory requirement that the wholesale “ price ” of brand liquor, which makes up most of the liquor market, shall be “no higher than" that charged anywhere in the country resulted from this study and recommendation.
The constitutional validity of the statute was upheld against the vigorous argument of the liquor industry that it ‘ ‘ did not promote temperance ” (Seagram & Sons v. Hostetter, 16 N Y 2d 47, affd. 384 U. S. 35, rehearing den. 384 U. S. 967; see, espe *529 cially, the appellant’s argument based on temperance, 16 N Y 2d, at p. 49).
Thus it is rather clear that the Legislature does not equate higher prices of liquor with temperance, and the statute must be read as saying that while temperance is to be promoted, the New York consumer must not, for this reason, be discriminated against by paying higher prices for the liquor he chooses to buy.
Consistently with this, the Legislature as part of the 1964 amendments to the statute also took steps to discourage monopoly and increase competition and hence, presumably, keep prices to consumers down, by repealing rather large distance requirements between retail license stores which had been provided by former subdivision 4 of section 105 and which the Governor’s message to the Legislature had described as “ artificial devices ” through which the liquor industry received ‘ ‘ uniquely beneficial treatment at the consumer’s expense ” (see Matter of Hub Wine & Liq. Co. v. State Liq. Auth., 16 N Y 2d 112, 116, 117).
It is with this background to the policies formulated by the present statute that subdivision 19 of section 105 dealing with signs and advertising of ‘ ‘ price ’ ’ must be read.
The text of the subdivision is this: “19. No licensee authorized to sell beer or liquor at retail for consumption off the premises shall display any sign on or adjacent to the licensed premises, setting forth the price at which beer or liquor, or any brand thereof, is sold or offered for sale, or advertise such price in any other manner or by any other means, except in the interior of the licensed premises.”
That subdivision which before the 1964 revision by chapter 531 had referred only to beer, was, as a part of the general revision in 1964, amended to include liquor and it would not be reasonable to think that the Legislature added “liquor” to its regulation of signs and advertising of “price” in order to increase prices at the same time its manifest concern and avowed policy was to bring liquor prices down and to prevent discrimination against New York consumers.
Thus the language of subdivision 19 should not be read to impose greater restrictions on competition and on advertising of liquor than its words require. Its actual words prohibit advertising of “ the price ” and not of comparative terms or selling arguments.
*530 Long after the present charges against petitioners of violations of subdivision 19 were made by the Authority in 1967, and while the appeal was pending in this court, the Legislature in 1969 (ch. 1155) added subdivision 20 to section 105, which made further directions as to ‘ ‘ price ’ ’.
This new amendment has neither any effect on the present proceedings nor on the proper construction to be given to subdivision 19. The first paragraph (a) of the new subdivision requires prices of liquor and wine to be placed near the items to be sold and restricted the .size of the .signs.
The second paragraph (b) prohibits banners, signs or other “ devices ” advertising “ sale ”, “ discounts ”, “ reductions ”, or “ bargains ” or any “ similar reference to the price ” to be displayed on the premises except under certain stated conditions.
This specific restriction on banners and signs on the licensed premises does not limit the unamended provisions of subdivision 19 as to advertising ‘ ‘ by any other means ’ ’, e.g., newspaper advertising which does not itself state “ the price ”.
Exact consistency is not easily spelled out in the successive amendatory legislation as to liquor advertising, but until the Legislature repeals its main mechanism in section 101-b (subd. 3, par. [d]) to keep prices of liquor low on New York consumers, it must be assumed that it favors lower prices to consumers and favors competition among dealers. Thus ambiguous terms in price .statutes should be read in this direction.
The present appeals are concerned with two proceedings against retail licensees. •
In Jacoves the hearing officer found that the licensee advertised in newspapers in these terms: “ Save over $——”, “ 22% off”, “ 25% off”. He found, however, that “the price” on which the liquor was to be sold could not be determined ‘ ‘ from the use of such words or percentages ”.
The Liquor Authority, however, rejected this finding and sustained the charge that the licensee’s advertising had violated the statute, suspended the license for 10 days, required payment on the licensee’s bond, but temporarily deferred the 10-day suspension if the penal amount of the bond were paid.
The determination was unanimously annulled by the Appellate Division in a memorandum: “ In our opinion, petitioner did not *531 publicize ‘ the price ’ (Alcoholic Beverage Control Law, § 105, subd. 19) of liquor by newspaper advertisements such as ‘ 22% off Save over 1.20 quart ’, ‘ save more than 22% ’, and ‘ save over $4 on 3 Pack ’. Potential customers could not know what the price was, what the cost was or the amount of money they would have to spend until they patronized the store. Accordingly, under the circumstances herein, the advertisements did not violate the law or the spirit of the statute ”. The court made reference to its concurrent decision in Matter of Great Eastern Liq. Corp.
The advertising in Great Eastern Liquor contained the words ‘‘ at wholesale ’ ’ and "wholesale ’ ’. The hearing officer in ruling the charge was “ not sustained ” found that the advertisements did ‘ ‘ not reveal the price or prices that the liquor items listed therein were sold or offered for sale ”. The Authority reversed the hearing officer’s report and sustained the charge, one member voting to dismiss. A suspension and forfeiture penalty were imposed.
The Appellate Division unanimously annulled the determination in an opinion. This decision, as it has been noted, became the basis for the decision in Jacoves.
Although it is an appellant here, the Liquor Authority agrees that the 1964 amendments to the statute as construed in Seagram & Sons and Matter of Hub Wine & Liq. Co. (supra), designed to liberalize the policy of the State, require that the “price ” provisions of subdivision 19 of section 105 be read to restrict advertising only to the extent necessary to meet the literal words of the statute and the Authority thus agrees in effect with the arguments of petitioners.
On reviewing its own reading of the statute and the administrative construction of its effect, the Authority states in this court its acceptance of advertisements using terms such as “priced under ” or “less than” a stated amount as being lawful. It states: “An interpretation of the section of law involved was required strictly in the public interest (Alcoholic Beverage 'Control Law, §§ 2, 160), and the section was so construed that, unless the actual price .at which the item of liquor was being sold or offered for sale was stated, the advertisement would not violate the statute. This, it is submitted, is a reasonable and rational interpretation made in the public interest and *532 for the public welfare, and calculated to best carry out the legislative intent to provide the public with the benefits of an open competitive market. Moreover, the phrases considered followed generally the usual and normal methods of advertising where the actual or specific prices are not given but the attention of the public is desired within budgetary considerations. There can be no doubt that these advertisements brought about a more competitive market.”
Several court decisions ran counter to this interpretation by the Authority, the principal one being Matter of Rosenblum v. Als Liqs. (27 A D 2d 521 [First Dept.]), but the effect of which was limited by the later decision of that court in Matter of Samjack Liqs. v. State Liq. Auth. (32 A D 2d 258).
The present decisions of the Appellate Division, Second Department, are consistent with the original view of the Liquor Authority which, although an appellant here, is still held as its view. The appeal, then, is here-to resolve the conflict and to aid in the administration of the statute.
The orders should be affirmed, with costs.