OPINION OF THE COURT
Meyer, J.
The issue in this case is whether a county may ban all *195 signs on or near service station premises which refer directly or indirectly to the price of gasoline, and thus limit service station price advertising to the uniform price signs atop the gasoline pumps which the ordinance requires. We hold section 3 of the Westchester County law in question when read in the context of the entire law to be unconstitutional because, in violation of the First Amendment to the United States Constitution as made applicable by the Fourteenth Amendment to the States, it makes speech impermissible solely on the basis of content.
The facts are not in dispute. Defendant, Mobil Oil Corporation, was found guilty of violating section 3 of Local Law No. 9 of the Local Laws of 1974 of the County of Westchester because it posted at its gasoline station and car wash in Tuckahoe along the curb side of the station premises, facing in opposite directions, so that the large lettering of the signs could be seen by passing motorists, two signs, approximately four feet by four feet in size and reading "Check Our Low Low Low Prices”. Mobil conceded that the purpose of the signs was "to attract persons to the gas pumps as well as the car wash”. On appeal, the Appellate Term reversed on the law and dismissed, two Judges holding section 3 unconstitutional, and the third being of the opinion that the sign did not violate the ordinance.[1] The matter is here by leave of a Judge of this court.
Local Law No. 9 in its first two sections details specifications as to size, lettering, content, placement and visibility of price signs it requires to be posted on each individual pump from which gasoline or diesel fuel is sold. Sections 3 and 4 of the law then provide:
"Section 3. No sign or placard stating or referring directly or indirectly to the price or prices of gasoline or diesel motor *196 fuel other than such signs or placards as hereinabove provided shall be posted or maintained on, at, near or about the premises on which said gasoline is sold or offered for sale.
"Section 4. Fraudulent Practices. It shall be unlawful for any person, firm or corporation to sell or offer for sale gasoline or diesel motor fuel in any manner so as to deceive or tend to deceive the purchaser as to the price, nature, quality or identify thereof.”
Violation of the law is an offense punishable by fine, each day of noncompliance after a notice of violation constituting a separate offense.
In People v Arlen Serv. Stas. (284 NY 340) we considered a local law of the City of New York which contained essentially the same requirements as to posting signs on individual pumps and which included a provision substantially identical with section 3 of the Westchester law. In Arlen the law was attacked as in violation of the due process and equal protection clauses, but not on free speech grounds, presumably because the then understanding (proven correct some two years later by the Supreme Court’s holding in Valentine v Chrestensen, 316 US 52) was that commercial speech was not protected by the First Amendment. The intervening years have seen Chrestensen first distinguished (Bigelow v Virginia, 421 US 809), then expressly overruled by Virginia Pharmacy Bd. v Virginia Consumer Council (425 US 748, 765), and the law of commercial speech expounded and delimited in a series of decisions, which are considered below. The result with respect to the instant case has been that on this appeal the law in question is attacked on all three grounds. Since we hold it unconstitutional on free speech grounds, we do not reach or consider the due process and equal protection grounds argued by the parties.
Since the Virginia Pharmacy case was decided we have had two occasions to consider regulations of commercial speech (People v Remeny, 40 NY2d 527, and Suffolk Outdoor Adv. Co. v Hulse, 43 NY2d 483) and the Supreme Court has dealt with the question in Linmark Assoc. v Willingboro (431 US 85); Bates v State Bar of Ariz. (433 US 350); Ohralik v Ohio State Bar Assn. (436 447); and Friedman v Rogers (440 US l).[2]
*197 In Remeny (supra), we held invalid a New York City ordinance that absolutely prohibited any street distribution of commercial or business advertising because its absolute prohibition went far beyond the reasonable regulation of time, place and manner of distribution of commercial speech that is constitutionally permissible. In Suffolk Outdoor Adv. Co. (supra), we upheld a Southampton ordinance prohibiting nonaccessory billboards as a proper exercise of the police power to improve the aesthetics of the community, noting with respect to the free speech aspect of the case that the same governmental interest in aesthetics authorized regulation of the place and manner of speech and that the challenged ordinance made no attempt to regulate the content of speech appearing on the billboards. Those two decisions, while strongly suggestive of unconstitutionality of the law in question, are not, however, determinative, in view of the limitation of the First Amendment overbreadth doctrine recognized in the subsequent Supreme Court commercial speech decisions.
The first of those decisions, Linmark, held invalid an ordinance proscribing, in an effort to stem white flight from a racially integrated community, the posting of "for sale” or "sold” signs on all but model homes. The Supreme Court held that the fact that the ordinance restricted only one method of communications (signs) did not save it because, though other alternative methods of selling houses were theoretically available, real estate is not marketed through leaflets or sound trucks and other available media involved greater cost and less autonomy (and consequently less effectiveness) than a sign in front of the house to be sold, and because having prohibited but one type of lawn sign it had not been enacted to protect aesthetic values. Concluding that the township’s interest was in regulating content rather than time, place and manner of posting and was not in preventing deception, the court struck the ordinance down because Willingboro had failed to establish that content regulation was needed to assure that the community remained integrated.
The Bates decision is particularly pertinent because it held *198 that a State disciplinary rule prohibiting attorneys from advertising could not constitutionally be applied to an advertisement of "legal services at very reasonable fees” which listed specific services and fees. The court recognized that misleading advertising can be restrained and that an advertising claim with respect to the' quality of services, because not readily susceptible of verification, might be misleading. With respect to the advertisement in question, however, it found none of the justifications offered for the regulation to be an acceptable reason for suppression of all advertising by attorneys. Holding inapplicable to professional advertising the overbreadth doctrine (which permits free speech attack without a demonstration that the challenger’s specific conduct is constitutionally protected), the court considered the specifics of the advertisement in issue and found neither its reference to "legal clinics” not its offer of services at "very reasonable” prices to be misleading. Ohralik, on the other hand, upheld the prohibition against in-person solicitation by an attorney because of the potential for, and legitimate State interest in preventing those aspects of solicitation involving, fraud, undue influence, intimidation and overreaching. It expressly held that a lawyer can be disciplined for soliciting under circumstances likely to result in such adverse consequences, without a showing that in the particular instance they did result.
Friedman, the most recent decision of the Supreme Court on the subject, upheld a Texas act prohibiting the practice of optometry under a trade name. Noting that use of a trade name conveyed no information about price or the nature of the services offered and presented numerous possibilities for deception with which the Texas Legislature was familiar, which had been reviewed in an earlier Texas Supreme Court decision, and some of which had been substantiated as to Rogers, one of the plaintiffs in the Freidman case, by deposition testimony, the Supreme Court stated that "Even if Rogers’ use and advertising of the trade name were not in fact misleading, they were an example of the use of a trade name to facilitate the large-scale commercialization which enhances the opportunity for misleading practices” (440 US 1, 15, supra) and concluded that the statute was a constitutionally permissible regulation for the protection of the public from deceptive use of optometrical trade names.
Against this background we consider the arguments advanced by the parties. Mobil’s position is that Westchester’s *199 law regulates content rather than time, place and manner, that its total prohibition bears no relation to the purpose it purports to serve, and that there are no effective alternate channels of communication. The county contends that Mobil has not borne its burden of overcoming the presumption of constitutionality, that Mobil’s "Check Our Low Low Low Prices” sign is potentially misleading and that Mobil, not having shown that its prices are in fact lower than its competitors’, has not shown that as applied to Mobil the statute is unconstitutional. The difference between them is, thus, that Mobil’s argument is addressed primarily to facial unconstitutionality, while the county’s burden of proof argument essentially addresses unconstitutionality of the law as applied.
In light of the holding in Bates (433 US, at p 380, supra), reiterated in Ohralik (436 US, at p 462, n 20, supra) and Friedman (440 US, at p 10, n 9, supra), that overbreadth analysis is not applicable to commercial speech, it is clear that, considering section 3 alone, unconstitutionality as applied cannot be found on the present record. As the county contends, Mobil has introduced no evidence to establish that its prices are lower than its competitors’ and, absent such evidence of truthfulness, the presumption of constitutionality and the failure to negate the possibility of deception would require that the law be upheld against Mobil’s attack (Friedman v Rogers, supra).
The inquiry does not end there, however, for the law in question must be interpreted under applicable State law principles of statutory construction, and under those principles section 3 must be held to be addressed only to truthful speech. So interpreted the section cannot constitutionally be applied to proscribe defendant Mobil’s signs.
It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other (Abood v Hospital Ambulance Serv., 30 NY2d 295, 300; see McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 97, 98, 130). Section 3 cannot, therefore, be considered apart from section 4, which is directed expressly at an "offer for sale [of] gasoline or diesel motor fuel in any manner so as to deceive or tend to deceive the purchaser as to the price, nature, quality or identity thereof’.
 When sections 3 and 4 are considered together and together with section 5 (which makes violation of either *200 section 3 or section 4 an offense), section 3 cannot be construed as aimed at deception. What section 3 proscribes is the posting on or near premises where gasoline is sold of a sign referring to the price of gasoline or diesel fuel. What section 4 proscribes is deceit or tendency to deceive as to price, among other things, in offering for sale in any manner gasoline or diesel fuel. The differences in the two sections are only that section 3 is explicit as to the medium (signs) and content (price of gasoline) proscribed while section 4 covers any medium and three other content categories than price, and that section 4 expressly requires deceit or the tendency to deceive whereas section 3 does not. Construing the entire law as a whole and bearing in mind the rule that a general provision of a statute applies only where a particular provision does not (Hoey v Gilroy, 129 NY 132; People ex rel. Davidson v Gilon, 126 NY 147; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 238) and that the statutes enacting regulations malum prohibitum are to be strictly construed (State of New York v Mobil Oil Corp., 38 NY2d 460. 466; Matter of Asheroff v Parking Violations Bur. of Transp. Admin. of City of N. Y. 38 AD2d 474, 477; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 271), we conclude that section 3 is not aimed at the possibility of deception through the posting of a sign referring to the price of gasoline because section 4 is.[3]
With respect to the instant prosecution, therefore, there is no overbreadth problem, for section 3, as it must be construed, ,is being unconstitutionally applied to Mobil to proscribe truthful commercial speech. Unless it can be justified on other grounds, or as a regulation solely of time, place or manner, or unless there are available alternate channels of communication, section 3 is, therefore, under the reasoning of the Supreme Court cases discussed above, unconstitutional as applied to defendant Mobil.
The strong societal and individual interest in the free dissemination of truthful price information as a means of assuring informed and reliable decision making in our free enterprise system was the basis for holding unconstitutional the statute involved in the Virginia Pharmacy case and the disciplinary regulation at issue in Bates, both of which were *201 sought to be applied so as to prevent the advertising of price data. The Supreme Court was, moreover, at pains in Friedman to identify that interest and to differentiate protected advertising of price from proscribable use of a trade name which "conveys no information about the price and nature of the services offered” (440 US, at p 12, supra).
This is not to say that price advertising can never be subjected to regulation. One valid purpose for regulation, as we held in Suffolk Outdoor Adv. Co. v Hulse (43 NY2d 483, supra), would be the improvement of the aesthetics of the community. The county does not argue aesthetics as a ground for sustaining its law, nor would such an argument be upheld in view of the fact that the law prohibits only gasoline price signs and none other, no matter how blatant or bizarre.
What the county does argue is that it is only regulating the place of advertising, its purpose being to centralize the location of price information in the pump top signs by prohibiting all other competing advertising which could divert the consumer’s attention from the actual price, by insuring that the consumer’s decision is based on facts not advertising "puff”, and by eliminating the necessity for the consumer’s driving up to the pump to learn the price. Bearing in mind that by hypothesis, this being a prosecution under section 3, we are concerned with truthful information, we think the answers to that argument are that the county has "not demonstrated that the place * * * of the speech produces a detrimental 'secondary effect’ on society” (Linmark, 431 US, at p 94, supra) and that, as the Supreme Court observed in Virginia Pharmacy (425 US, at p 770, supra) and quoted with approval in Linmark (431 US, at p 97, supra): "There is, of course, an alternative to this highly paternalistic approach. That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them.”
Finally, the county argues that ample alternatives remain open for gasoline price advertisement through print and electronic media advertising, that no useful consumer information is withheld from the public by virtue of the law and that the advertiser does not lose access to passing motorists as potential customers. Since, as already shown, price information clearly is useful consumer information and not all passing *202 motorists will be able to read the pump top signs from the highway, it is far from clear that useful consumer information is not withheld from the public by the law. Moreover, that serious question exists concerning the adequacy of available alternates is evident from the following paraphrase (omitting citations) of Linmark’s reasoning on this issue (p 93): "Although in theory sellers remain free to employ a number of different alternatives, in practice [gasoline] is not marketed through leaflets, sound trucks, demonstrations, or the like. The options to which sellers realistically are relegated — primarily newspaper advertising and [television] — involve more cost and less autonomy than * * * signs; * * * are less likely to reach persons not deliberately seeking sales information * * * and may be less effective media for communicating the message that is conveyed by a * * * sign in front of the [service station].”
Accordingly, the order of the Appellate Term, as resettled, should be affirmed.

. Mindful of the rule that constitutional issues are not to be decided when there exists a nonconstitutional basis of decision, we note our disagreement with the reasoning of the concurring Judge. His concurrence was based on Matter of Great Eastern Liq. Corp. v State Liq. Anth. (25 NY2d 525) which held that a statute prohibiting advertisement of liquor prices was not violated by advertisements referring to percentage savings and "less than wholesale” prices. Great Eastern is distinguishable on at least two grounds: (1) the statute there involved spoke only to advertisement of the price; the law here in issue prohibits any sign "stating or referring directly or indirectly to the price” (emphasis supplied); (2) the liquor authority’s interpretation of the Great Eastern statute was that there was no violation unless the actual price was stated in the advertisement; there is no similar interpretation in this case.

. These Supreme Court decisions have given rise to a substantial number of scholarly articles and comments. (See, e.g., Rotunda, Commercial Speech Doctrine in the Supreme Court, 1976, U Ill L Forum 1080; Comment, First Amendment Protec *197 tion for Commercial Advertising: The New Constitutional Doctrine, 44 U Chicago L Rev 205; Comment, Commercial Speech and the First Amendment: An Emerging Doctrine, 5 Hofstra L Rev 655; Comment, Constitutional Law — First Amendment— Commercial Speech, 24 NY L School L Rev 225; Note: Effect of First Amendment Protection of Commercial Speech on Municipal Sign Ordinances, 29 Syracuse L Rev 941.)

. That, as the county argues, a section 4 prosecution may require proof of intent is perhaps a pragmatic problem for the prosecution but does not indicate a legislative purpose to reach through section 3 deceitful or misleading commercial speech which is expressly proscribed by section 4.