OPINION OF THE COURT
Patrick J. McGrath, J.
The defendant is charged by indictment with two counts of menacing a police officer, in violation of Penal Law § 120.18 and one count of criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (1). The defendant filed an omnibus motion and the People have filed an affirmation in opposition.
The court has made an in camera inspection of the grand jury minutes pursuant to CPL 210.30 and determines that release of the minutes is not necessary to assist the court in determining the motion to dismiss on the ground of insufficient evidence, and therefore denies the defendant’s motion to release the grand jury minutes.
Defendant also moves to dismiss counts one and two, both for menacing a police officer, because of lack of proof that the pellet gun in question was a deadly weapon under Penal Law § 10.00 (12), i.e., that it was loaded, operable and “readily capable of producing death or other serious injury.” Defense counsel acknowledges that Penal Law § 120.18 prohibits the display of “a deadly weapon, knife, pistol, revolver, rifle, shotgun, machine gun or other firearm, whether operable or not,” but argues that a pellet gun does not fall within any enumerated item in the statute except a “deadly weapon,” and therefore, the People were required to prove that the pellet gun was operable. Defendant contends that the People would not have to establish operability of a pistol, revolver, rifle, shotgun, machine gun or other firearm under Penal Law § 120.18.
Defendant also argues that there was insufficient proof that the defendant intended to use the pellet gun unlawfully against another, and therefore, the criminal possession of a weapon count should also be dismissed.
The People argue that defendant’s interpretation of Penal Law § 120.18 is illogical and contradicts the intent of the stat *195 ute, in that operability is not the harm sought to be prevented. Further, that there is sufficient evidence of defendant’s intent to use the pellet gun unlawfully against another.
In the context of legal sufficiency, the function of the grand jury is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime, as opposed to that of a petit jury, which bears the ultimate responsibility of determining the guilt or innocence of the accused. (People v Calbud, Inc., 49 NY2d 389, 394 [1980].) Therefore, an indictment is authorized when the evidence before the grand jury is legally sufficient to establish that such person committed a crime and competent and admissible evidence provides reasonable cause to believe that such person committed the crime. (CPL 190.65 [1].) The standard of review upon a motion to dismiss for legal insufficiency is whether the evidence before the grand jury, if unexplained and uncontradicted, would warrant a conviction by a trial jury. (People v Pelchat, 62 NY2d 97 [1984].) “Legally sufficient evidence” means competent evidence which if accepted as true, would establish every element of the offense charged and the defendant’s commission thereof except when corroboration required by law is absent. (CPL 70.10 [1].) Under CPL 70.10 (2), “[reasonable cause to believe that a person has committed an offense” exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Therefore, the evidence before a grand jury is legally sufficient if there is competent evidence, which, if accepted as true, establishes every element of the offense charged or a lesser included offense and the defendant’s commission thereof. (People v Mayo, 36 NY2d 1002 [1975].)
Penal Law § 120.18 reads as follows:
“A person is guilty of menacing a police officer or peace officer when he or she intentionally places or attempts to place a police officer or peace officer in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, knife, pistol, revolver, rifle, shotgun, machine gun or other firearm, whether operable or not, where such officer was in the course of performing his or her official duties and the defendant knew or reasonably should have known that such victim was a police officer or peace officer.”
*196 In this case, there was no evidence presented to the grand jury that the pellet gun was loaded or operable.
A “deadly weapon” is defined, in pertinent part, as: “any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged.” (Penal Law § 10.00 [12].) Although the statute is silent on the point, it is now well established that in order to prove criminal possession of a handgun, the People must prove that the weapon is operable. (Penal Law § 265.01 [1]; see People v Saunders, 85 NY2d 339, 342 [1995]; People v Cavines, 70 NY2d 882, 883 [1987]; People v Shaffer, 66 NY2d 663 [1985].) The courts have assumed the same rule applies to criminal possession of rifles and shotguns under Penal Law § 265.01 (4). (See Matter of Jermaine M., 188 AD2d 336, 337 [1st Dept 1992]; People v Padron, 118 AD2d 599 [2d Dept 1986]; People v Forward, 46 AD3d 1222 [3d Dept 2007]; People ex rel. Walker v Hammock, 78 AD2d 369 [4th Dept 1981].) Requiring proof of operability for the two offenses is reasonable because there is no functional difference between a handgun and a rifle or shotgun, and no principled reason to treat them differently in this respect for purposes of the criminal possession statutes. Both are capable of inflicting serious injury or death, but only if operable. (See People v Longshore, 86 NY2d 851 [1995].)
A pellet gun is not a firearm. (Matter of Michael H., 38 AD3d 550, 551 [2d Dept 2007]; People v Jones, 54 AD2d 740 [2d Dept 1976]; People v Schmidt, 221 App Div 77, 78 [1st Dept 1927].) However, it may be considered a deadly weapon. (See People v Wilson, 283 AD2d 339 [1st Dept 2001].) In People v Laureno (163 Misc 2d 873 [1995]), the defendant pointed a pellet gun at a police officer and was charged with Penal Law § 265.01 (2), which requires, inter alia, the possession of a “dangerous or deadly instrument or weapon.” The defendant sought dismissal of the information alleging that no ballistics report was ever submitted to prove that the pellet gun was operable. The court dismissed that portion of the information alleging criminal possession of a weapon in the fourth degree for facial insufficiency based on its finding that a pellet gun is a deadly weapon because it is capable of causing serious injury or harm to another, and therefore, proof of its “operability” in the form of a ballistics report is required. {Id. at 875.)
The reason courts have found that pistols, revolver, handguns, shotguns and rifles must be operable is because it is the operability which makes these weapons dangerous, and, therefore, *197 criminal. (See People v Longshore.) However, the need to prove operability extends beyond ordinary guns. Courts have required proof that other weapons are capable of performing the mechanical function that makes them dangerous. (People v Perez, 123 AD2d 889 [2d Dept 1986] [failure to establish the operability of a light-handled knife as a gravity knife required dismissal]; People v McCullum, 184 Misc 2d 70 [2000] [a valid information for possession of a can of mace must contain factual allegation that it was operable]; People v Khoi Dang, 172 Misc 2d 274 [1997] [a valid information for possession of an “electronic stun gun” must contain factual allegation that it was “operable,” defined as capable of emitting an electronic charge, along with the supporting deposition of person who tested it].)
The statute at issue here prohibits the display of a “deadly weapon, knife, pistol, revolver, rifle, shotgun, machine gun or other firearm, whether operable or not.” (Penal Law § 120.18.) In his Practice Commentary for Penal Law § 120.18, Judge Donnino raises one potential problem with the law, specifically, that “the statute dictates that the firearm need not be operable. That may raise an interesting fact question as to what constitutes a ‘firearm’ if the item claimed to be a ‘firearm’ is not capable of functioning as one.” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 120.18 at 37.) Although the statute was enacted in 2005, there are no reported cases analyzing the provisions at issue.*
Therefore, the court must look to the general rules of statutory construction. The starting point must be with the plain meaning of the statutory language, since the statutory text is the “clearest indicator of legislative intent.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see also Bluebird Partners v First Fid. Bank, 97 NY2d 456, 460-461 [2002]; Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001].) The court must also consider a statute as a whole, reading and construing all parts of an act together to determine legislative intent, and, where possible, should “harmonize [ ] [all parts of a statute] with each other . . . and [give] effect and meaning ... to the entire statute and every part and word thereof.” (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98; see also People v Mobil Oil Corp., 48 NY2d 192, 199 [1979].) *198 A statute should be construed “according to its natural and most obvious sense, without resorting to an artificial or forced construction.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) The “last antecedent” rule of statutory construction dictates that the “relative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote, unless such extension is clearly required by a consideration of the entire act.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 254.) “Although statutes will ordinarily be accorded their plain meaning, it is well settled that courts should construe them to avoid objectionable, unreasonable or absurd consequences.” (Long v State of New York, 7 NY3d 269, 273 [2006] [citations omitted]; see Matter of Medical Socy. of State of N.Y. v State of N.Y. Dept. of Health, 83 NY2d 447, 451-452 [1994]; McKinney’s Cons Laws of NY, Book 1, Statutes § 141.)
The plain meaning of the phrase “whether operable or not” is clear in that it removes the People’s burden to prove operability. However, the defendant’s interpretation of Penal Law § 120.18 implies that the “whether operable or not” language only modifies the “pistol, revolver, rifle, shotgun, machine gun or other firearm,” and does not pertain to “deadly weapon.” Qualifying language should apply to the words or phrases immediately preceding it, as opposed to “remote” portions of the statute. The court finds that “deadly weapon” is not remote in the statute, as it is included in its only sentence. Further, there is nothing inherent about the grammatical construction of the statute which prevents the phrase “whether operable or not” from modifying deadly weapon, especially in light of the aforementioned case law which places an affirmative duty on the People to prove that other weapons besides guns (i.e., mace or stun guns) must be operable to come within the definition of a “deadly weapon” pursuant to Penal Law § 10.00 (12).
Although not authoritative, the court notes that the model jury charge drafted by the Committee on Criminal Jury Instructions for Penal Law § 120.18 explains that “deadly weapon” should be defined, if applicable. A footnote to this model charge indicates
“[t]he definition of this crime includes ‘deadly weapon’ and a number of other items. Those other items are found in the definition of ‘deadly weapon’ except for a ‘billy,’ ‘blackjack,’ or ‘metal knuckles.’ *199 If one of these items is in issue, then so define deadly weapon. See Penal Law § 10.00 (12). We would also note that the definition of other items listed in the definition of deadly weapon requires operability. However, the definition of this crime expressly excludes the need for operability.” (CJI2d[NY] Penal Law § 120.18 n 3 [emphasis supplied].)
In addition to the actual text and the recommended jury charge, the court has also reviewed the legislative history of Penal Law § 120.18, which was enacted under the Crimes Against Police Act (L 2005, ch 765). That Act created several new crimes and enhanced penalties for crimes committed against police/peace officers. While it does not address the specific language, the New York State Senate Memorandum in Support (2005 McKinney’s Session Laws of NY at 2575-2576) which enacted this statute states that the purpose of the Act is to “increase the penalties for those who threaten, injure, or kill police officers” (emphasis added). The “Statement in Support” indicates that
“we must do everything within our power to protect the men and women in law enforcement who risk their lives every day to protect us. This bill represents a tough new approach to penalizing any threat or attack against a law enforcement officer during the performance of his or her duties” {id. at 2576 [emphasis added]).
The court finds that the use of the terms “threaten” and “threat” are instructive here, and indicate a broad reading of Penal Law § 120.18.
Finally, the court finds that the most compelling reason to extend the “whether operable or not” language to deadly weapons under this statute is that failing to do so would lead to the absurd conclusion that the People must prove that a pellet gun is operable, but have no such burden with respect to a pistol, revolver, rifle, shotgun, machine gun or other firearm. The latter are “capable of inflicting serious injury or death only if operable.” (See People v Longshore at 852; see generally Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 265.) Similarly, a pellet gun is only dangerous if it is operable. As noted above, there is no functional difference between a handgun and a rifle or shotgun, because all are capable of inflicting serious injury or death only if operable, and therefore, all should be treated the same under Penal Law article 265. (People v Longshore.) Likewise, if the display of an *200 inoperable firearm would be legally sufficient under Penal Law § 120.18, then there is no logical reason that display of an inoperable pellet gun would not also be sufficient.
The court is aware that by definition, a deadly weapon is one that is both operable and loaded with live ammunition. (Penal Law § 10.00 [12]; People v Shaffer, 66 NY2d 663, 664 [1985].) Under our principles of statutory construction, the legislature is presumed to be familiar with existing decisional law (McKinney’s Cons Laws of NY, Book 1, Statutes § 191, Comment) and therefore, the conspicuous and intentional language utilized herein evinces a conscious shift from the lethal potential of the weapon, and rather, focuses on the threat which comes from the display of a weapon, readily inferable as deadly from afar, to a police officer in the course of official duties, which are imbued with a high degree of danger and risk.
Therefore, this court holds that proof of “operability” is not required under Penal Law § 120.18, and therefore, the lack of any proof of operability here is not fatal to two charges of menacing a police officer. Defendant’s motion in this regard is denied.
The court also finds there was sufficient evidence that the defendant intended to use the weapon unlawfully against another. The undisputed evidence before the grand jury establishes that the defendant held what appeared to be a semiautomatic handgun at his side while two police officers stood directly in front of him, ordering him to drop his weapon. The evidence further establishes that the defendant began to raise the weapon slowly in the officers’ direction, while the officers continued to order defendant to drop the weapon. Viewing the evidence in the light most favorable to the People, as well as the inferences that logically flow from the facts (People v Bello, 92 NY2d 523, 525 [1998]; People v Deegan, 69 NY2d 976, 979 [1987]; People v Jennings, 69 NY2d 103, 114 [1986]), the court finds that the People presented sufficient evidence of this element, and therefore, defendant’s motion is denied. (See People v Williams, 98 AD3d 1279 [4th Dept 2012] [evidence that police ordered defendant to drop his weapon and he refused to comply, and that defendant pointed the gun or waved the gun at the officers legally sufficient to support conviction for criminal possession of a weapon].)
The court is satisfied that the proceedings were procedurally correct and there was no defect in the grand jury proceeding. Nor does the court find that grand jury proceeding failed to *201 otherwise conform to the requirements of CPL article 190 to such a degree that the defendant was prejudiced and that the grand jury’s integrity was impaired. (CPL 210.35 [5].) The court also finds that the prosecutor’s instructions were adequate, as the grand jury was provided with enough information for it to intelligently decide whether a crime had been committed and whether legally sufficient evidence exists to establish the material elements of that crime. {People v Calbud, Inc., 49 NY2d 389, 394 [1980].)
Defendant also seeks dismissal pursuant to CPL 210.40 if the prosecutor engaged in misconduct. The exercise of the court’s discretion under this statute should occur only “under extraordinary and compelling circumstance in situations which cry out for fundamental justice.” (People v Serkiz, 17 AD3d 28, 31 [3d Dept 2005]; People v Rucker, 144 AD2d 994, 994 [4th Dept 1988], lv denied 73 NY2d 926 [1989].) No such circumstances are present here, and the motion is denied.
The motion for production of exculpatory material in the People’s possession is granted in accordance with Brady v Maryland (373 US 83 [1963]).
The District Attorney is directed to make available to the defendant all Rosario material in accordance with the directives as contained within CPL 240.44 and 240.45.
Defendant seeks an order compelling discovery and compelling the District Attorney to file a bill of particulars. The People claim that discovery demands were answered and a bill of particulars was provided on January 29, 2014.
The court will hold a Sandoval/Ventimiglia hearing prior to trial.
The defendant asks the court to preclude any statements made by defendant to law enforcement or their agents for which proper notice has not been given pursuant to CPL 710.30. The People claim they are not aware of any statements made by defendant to law enforcement. Therefore, defendant’s motion to preclude is premature. Further motions may be renewed in the event the People attempt to offer unnoticed statements.
Defendant’s request for a Dunaway/Mapp hearing is granted.
The defendant’s request to make further motions will be decided by the court if and when any further motions are made, subject to the provisions of CPL 255.20 (3) regarding due diligence and good cause.

 The only reported case found in connection with this specific statute addressed whether a federal border patrol agent fell within the definition of a police officer or peace officer, and in no way addressed operability. (People v Brenno, 16 Misc 3d 213 [2007].)