# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 55
In the Matter of DCH Auto, &c. et al.,
   Appellants,
  v.
Town of Mamaroneck, &c., et al.,
   Respondents.

Matthew S. Clifford, for appellants.
William Maker, Jr., for respondents.
CVS Albany LLC et al., International Council of Shopping Centers, Inc., Stop & Shop Supermarket Company, LLC, Wakefern Food Corporation, New York State School Boards Association, New York State Conference of Mayors and Municipal Officials et al., amici curiae.

WILSON, J.:

DCH Auto leased a parcel of real property located in Mamaroneck, New York. DCH's lease with the property's owner is a "net lease," which means that DCH must pay, in addition to rent, all the real estate taxes associated with the property. Starting in 2009,

- 1 -

DCH believed that certain tax assessments for the property were too high, so it challenged those tax assessments by filing grievance complaints with the local board of assessment review. After the board reviewed and denied the challenges to the assessments, DCH filed petitions for judicial review. Supreme Court dismissed DCH's petitions, holding that only an *owner*—and not a net lessee—may file the initial grievance complaints pursuant to RPTL 524 (3) and that the failure of the owner to file the initial grievance precluded judicial review of the board's determinations. The Appellate Division affirmed. The question we address is: does a grievance complaint filed with the assessor or board of assessment review at the administrative level by a net lessee who is contractually obligated to pay real estate taxes on the subject property satisfy RPTL 524 (3) such that the net lessee may properly commence an article 7 proceeding upon rejection of its grievance? We answer in the affirmative and reverse.

I

DCH Auto, now known as DCH Investments Inc. (New York) (together, DCH), operates a car dealership in Mamaroneck. In 2007, DCH entered into a 20-year net lease with the nonparty owner, 700 Waverly Avenue Corp. (Owner), of a parcel of real property located at 700 Waverly Avenue in the Village of Mamaroneck (Village), which is located within the Town of Mamaroneck (Town) (together, Mamaroneck).

The lease obligates DCH to pay "all ad valorem real estate taxes or other taxes in the nature thereof . . . levied or imposed against or with respect to" the subject property

during the lease term.  The lease also provides that DCH "shall have the right, at its sole cost and expense, to contest the amount or validity, in whole or in part, of any [tax] relating to the [subject property] by appropriate proceedings."

By administrative complaints pursuant to RPTL 524 (3), DCH timely challenged eight tax assessments of the subject property: the Town's tax assessments for five tax years (2009, 2010, 2011, 2013, and 2014), and the Village's tax assessments for three tax years (2010, 2011, and 2013).  DCH filed the 2014 complaint against the Town in Owner's name but filed all the other complaints in its own name.

At the time DCH filed its grievances, the Town's website stated that "[a]ny person aggrieved by an assessment," including a "tenant who is required to pay the real estate taxes pursuant to a lease" "may file a complaint."  The Town's website also directed taxpayers to the website of the New York State Department of Taxation and Finance's Office of Real Property Tax Services (ORPTS), which similarly instructed that "[a]ny person who pays property taxes" including "tenants who are required to pay property taxes pursuant to a lease or written agreement" may file an assessment challenge.  That same instruction is still on ORPTS's website today (NY St Dept of Taxation & Fin, Off of Real Prop Tax Servs, *Contesting Your Assessment in New York State* 2 [Feb. 2012], https://www.tax.ny.gov/pdf/publications/orpts/grievancebooklet.pdf [last accessed June 9, 2022]).

For each complaint challenging the Town's assessments, the Town Board of Assessment Review  accepted the grievances, considered them, and confirmed the Town's assessments.  The Town Board did not dismiss the complaints or indicate that the

complaints were in any way defective. Similarly, the Village Board accepted and considered the complaints and confirmed the Village's assessments.

Once DCH received the Town and Village Board determinations, it timely filed judicial petitions challenging the Town and Village assessments pursuant to RPTL article 7. After procedural history not relevant here, in September 2016, the Town and Village jointly moved to dismiss each proceeding "for lack of subject matter jurisdiction due to [DCH]'s failure to satisfy a condition precedent for challenging the assessments"— namely "[t]he failure of the [o]wner to submit [the] RP-524 [c]omplaints." In opposition, DCH argued that the complaints were properly filed because RPTL 524 (3) did not provide that only an "owner" may file a complaint and that the plain text of RPTL 524 (3) and our case law "recognize the right of a non-owner tenant who is responsible for paying the real property taxes to seek both administrative and judicial review of the assessment" (Rec at 304-312). DCH alternatively argued that the purported defect was, at most, "technical"; that the Town and Village were not prejudiced by it; and the defect was not jurisdictional (Rec at 313-320).

Based on joint stipulated facts and submitted documentary evidence, Supreme Court granted the Town and Village's joint motion and dismissed the petitions. The court held that it lacked subject matter jurisdiction to review the assessments because, although DCH was "[u]ndisputedly . . . 'aggrieved' by the decisions of the Boards," it "did not satisfy a condition precedent to the commencement of these proceedings" because the owner did not file the complaints pursuant to RPTL 524 (3). Finally, the court held that "the failure of the owner to raise the RP-524 Complaint in the administrative process is a fundamental

error which the courts cannot cure because of a lack of subject matter jurisdiction." The

Appellate Division affirmed (178 AD3d 823 [2d Dept 2019]). It held that DCH "failed to

satisfy a condition precedent to the commencement of an RPTL article 7 proceeding since

it was neither the owner, nor identified in the complaints as an agent of the owner" (*id.* at

825). We granted leave to appeal (37 NY3d 903 [2021]).


II

A

The Real Property Tax Law (RPTL) sets out a two-step process for the review of

property tax assessments. First, pursuant to RPTL 524, "a complainant who is dissatisfied

with a property assessment may seek administrative review by filing a grievance complaint

with the assessor or the board of assessment review" (*Matter of Larchmont Pancake House

v Board of Assessors*, 33 NY3d 228, 235 [2019]). Second, once "the board of assessment

review has made a determination, any 'aggrieved party' may seek judicial review of the

assessment pursuant to RPTL article 7" (*id.*).

This case concerns the statutory language that governs the first step. The question

presented on this appeal is whether the initial administrative complaints filed by DCH fail

to meet the requirements of RPTL 524 (3) because DCH is not the owner of the property

at issue. Specifically, the parties dispute the meaning of the provision requiring that the

initial complaint be made "by the person whose property is assessed" (RPTL 524 [3]).

RPTL 524 (3), as relevant, provides:

"[A] complaint with respect to an assessment shall be on a form prescribed by the commissioner and shall consist of a statement specifying the respect in which the assessment is excessive, unequal or unlawful, or the respect in which real property is misclassified, and the reduction in assessed valuation or taxable assessed valuation or change in class designation or allocation of assessed valuation sought. Such statement shall also contain an estimate of the value of the real property. Such statement must be made by *the person whose property is assessed*, or by some person authorized in writing by the complainant or his officer or agent to make such statement who has knowledge of the facts stated therein. Such written authorization must be made a part of such statement and bear a date within the same calendar year during which the complaint is filed" (*id.* [emphasis added]).

In contrast, RPTL 704 (1)—which governs step two, filing a petition for judicial review of the assessment pursuant to RPTL article 7—provides:

"*Any person claiming to be aggrieved* by any assessment of real property upon any assessment roll may commence a proceeding under this article by filing a petition described in section seven hundred six of this chapter in the manner set forth in [CPLR 304]" (RPTL 704 [1] [emphasis added]).

"In order to maintain an article 7 tax certiorari proceeding, the aggrieved party must allege in its petition that 'a complaint was made in due time to the proper officers to correct such assessment'" (*Larchmont Pancake House*, 33 NY3d at 235, quoting RPTL 706 [2]).  That is, "the proper filing of an administrative grievance pursuant to RPTL article 5 is a condition precedent to judicial review pursuant to RPTL article 7" (*Larchmont Pancake House*, 33 NY3d at 235).

Mamaroneck's position is that RPTL 524 (3) is a condition precedent that must be satisfied for judicial review of a Board's determination of an assessment complaint to lie, and that the plain language of RPTL 524 (3) requires the administrative complaint be filed

"by the person whose property is assessed"—which it argues means the property owner, and only the property owner. Once the owner files the administrative complaint, according to Mamaroneck, then any aggrieved person, including a net lessee, can challenge the result of the administrative grievance in court. In opposition, DCH argues that RPTL 524 (3) does not limit the filing of a complaint to a property owner and that it satisfied the condition precedent requirement in RPTL 706 (2) to file for judicial review.

B

"When presented with a question of statutory interpretation, our primary consideration 'is to ascertain and give effect to the intention of the Legislature'" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006], quoting *Riley v County of Broome*, 95 NY2d 455, 463 [2000]). Although the text itself is generally the clearest indicator of legislative intent, where "the language is ambiguous, we may examine the statute's legislative history" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009], citing *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]).

Here, RPTL 524 (3) presents an ambiguity. The clause "person whose property is assessed" is not defined in the RPTL, and it lends itself to more than one reasonable interpretation (*see Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 662-663 [1998]). As Mamaroneck points out, the RPTL uses different language to delineate who may seek administrative review of a tax assessment by filing a grievance complaint with the assessor or the board of assessment review—"the person whose property is assessed" (RPTL 524 [3])—versus who may seek judicial review of the tax

assessment—"[a]ny person claiming to be aggrieved" (RPTL 704 [1]).  A colorable reading of the difference in that statutory language is that only an "owner" is a "person whose property is assessed" under the narrower language RPTL 524 (3).

As DCH urges, however, RPTL 524 (3) does not clearly require that a complaint be brought by an "owner" (or, *e.g.*, "title holder") of "real" property.  Had the legislature intended to require that only "owners" (or agents of owners) could initiate a grievance under RPTL 524 (3), it would have been simple to use that word.  Indeed, in RPTL article 5, the legislature used the word "owner" myriad times (RPTL 500; 502; 504 [6]; 510-a; 510 [1]; 511; 512 [4]; 518; 520; 522 [4] [b]; 523 [3]; 523-b; 524 [4]; 525 [4]; 543; 551-a; 553; 554; 556 [2] [b]; 556-b; 560 [1]; 562; 564 [1]; 566 [1]; 574 [1]; 575-a [3]; 575-b; 582; 586; 588 [2]; 589 [1]; 592 [1] [c]; 594; 596 [3]).  "We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended" (*People v Finnegan*, 85 NY2d 53, 58 [1995] [citations omitted]).  Here, the statutory language is broader—it provides that a complaint must contain a statement "by the person whose property is assessed" (RPTL 524 [3]).  Similarly, RPTL 524 (3) provides that if a complaint is not filed by "the person whose property is assessed," then it may be filed by "some person authorized in writing by the complainant" (RPTL 524 [3]).  Again, the legislature used the broad term "complainant," rather than the term "owner," and the statute gives no indication that the class of people who can authorize a third party to make the complaint is different from the class of people who may themselves file a grievance complaint.  Moreover, the word "whose" can reasonably be used and understood as denoting possession, not only ownership (*see*

Webster's Third New International Dictionary, Unabridged 2612 [Merriam-Webster 2002]

["of or belonging to whom as possessor or possessors : due to whom : inherent in whom :

associated or connected with whom"]).  Thus, DCH, also advances a colorable argument

that it, as the holder of an exclusive net lease for the subject property, falls within the term

"person whose property is assessed" in RPTL 524 (3).  We therefore examine the

legislative history to aid in interpreting that provision.


C

The legislative history of the origin of the clause "the person whose property is

assessed" demonstrates that a net lessee obligated to pay real estate taxes of the leased real

property may file a grievance under RPTL 524 (3).

Before 1896, any person "conceiving himself aggrieved" could complain to a board

of assessors.  For example, in 1799, the governing tax law provided that "assessors shall

meet, and on application of *any person conceiving himself aggrieved*, shall review the said

assessment" (L 1799, ch 72 [emphasis added]), and in 1851, the tax law similarly provided

that "[o]n the application of *any person conceiving himself aggrieved*, it shall be the duty

of the said assessors on such day to meet at the time and place specified, and hear and

examine all complaints in relation to such assessments that may be brought before them"

(L 1851, ch 176, § 4 [emphasis added]).

While the "any person conceiving himself aggrieved" statutory language was in

force, our Court's decisions similarly reflected that any aggrieved person could complain

to the local assessor.  For instance, in *Jewell v Van Steenburgh*, we held that assessor's

failure to give notice upon the completion of an assessment was a jurisdictional defect rendering the tax invalid because "[t]his is the only mode by which *persons interested* have an opportunity to be heard" (58 NY 85, 91 [1874] [emphasis added]).

During that same time period, when the "any person conceiving himself aggrieved" statutory language was still in force, we also used the language "parties whose property is assessed" to describe who may file grievance complaints with a local board of assessors (*People ex rel. New York v McCarthy*, 57 Sickels 631 [1886] ["Except for the provision of the statute authorizing *parties whose property is assessed* to appear before the town, ward, or city assessors, and make affidavit as to the circumstances and value of property assessed to them respectively, no provision is made for the hearing of such parties by any of the administrative bodies engaged in perfecting the valuations of taxable property"]). The issue in *People ex rel. New York v McCarthy* was different from the issue presented here— the petitioner was seeking a review of the state board of equalization's proceedings in equalizing property appraisals in the state among several counties—but it is nevertheless instructive that we appear to have considered the two phrases to be synonymous.

Then, in 1896, the "person . . . whose property is assessed" language first appeared in the tax law. That year, the legislature enacted a provision governing the hearing of grievance complaints. The new provision provided:

> "Such complainants shall file with the assessors a statement, under oath, specifying the respect in which the assessment complained of is incorrect, which verification must be made by *the person assessed or whose property is assessed*, or by some person authorized to make such statement, and who has knowledge of the facts stated therein" (L 1896, ch 908, § 36 [emphasis added]).

Although the clause "person assessed or whose property is assessed" was new, the New York State Commissioners of Statutory Revision explicitly stated that the change was not substantive:

> "The provision that the complaint shall be in writing and filed with the assessors is new.  L. 1857, ch. 176, § 6, requires the examination to be subscribed by witness and filed in town clerk's office, while § 36 merely requires the minutes of the testimony to be so filed.  *Otherwise there is no change of substance*" (1896 Rep of Commrs of Statutory Revision, reprinted in 1896 Annual Rep of Commrs of Statutory Rev of the St of NY at 39, available at https://www.google.com/books/edition/Annual_Report_of_the_Commissioners_of_St/bH44AAAAIAAJ?hl=en&gbpv=0 [emphasis added]).[1]

That the clauses "any person conceiving himself aggrieved" and "person assessed or whose property is assessed" were interchangeable is also supported by the text of the 1896 bill itself, which provided that in the event that a board of assessors failed to meet, "any person aggrieved by the assessment" could instead seek relief from the municipality's board of supervisors (L 1896, ch 908, § 40).

Thus, based on this evolution of the statutory text, and our Court's contemporaneous interpretations, it is clear that it was not the legislature's intent to limit the meaning of "person whose property is assessed" to owners of real property.

---

[1] "L 1857, ch 176" is a mis-citation.  The correct citation is to L 1851, ch 176, § 6, which, as accurately described in the 1896 Report of the Commissioners of Statutory Revision, did not contain a requirement that a complaint to the local assessors be filed in writing.

D

In keeping with the legislature's intent, we therefore hold that a grievance complaint filed with the assessor or board of assessment review at the administrative level by a net lessee who is contractually obligated to pay real estate taxes on the subject property satisfies RPTL 524 (3).

That interpretation is not only in keeping with the legislative history, but it construes the RPTL "as a whole," with "its various sections . . . considered together and with reference to each other'" (*Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018], quoting *People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]).  Interpreting the RPTL such that a net lessee may both file the RPTL 524 (3) complaint and (as is undisputed) the RPTL 704 (1) petition, given that the complaint is a prerequisite to filing a petition, harmonizes the two statutory steps of our tax assessment scheme.  Such a result ensures that the party with the economic interest and legal right to challenge an assessment will not be unable to raise a challenge because an out-of-possession landlord that lacks economic incentive fails to file an administrative complaint.  It also avoids an inequitable result by which a net lessee may be precluded from obtaining full review of its assessment if the complaint was brought by an owner with different interests, because a petitioner in an RPTL article 7 proceeding may not add grounds for review beyond those specified in the original RPTL 524 (3) complaint (*see Matter of Sterling Estates, Inc. v Board of Assessors of Nassau County*, 66 NY2d 122, 127 [1985]).  Indeed, our conclusion is consistent with guidance from the New York State Department of Taxation and Finance, which instructs that lessees who are contractually obligated to pay real estate taxes are eligible to grieve tax

assessments (*see* NY St Dept of Taxation & Fin, Off of Real Prop Tax Servs, *Contesting Your Assessment in New York State* [Feb. 2012] ["Any person who pays property taxes can grieve an assessment, including . . . tenants who are required to pay property taxes pursuant to a lease or written agreement"], https://www.tax.ny.gov/pdf/publications/orpts/grievancebooklet. pdf).

In support of its restrictive interpretation that "person whose property is assessed" in RPTL 524 (3) is limited to "owner," the Appellate Division primarily relied on *Matter of Circulo Housing Development Fund Corp. v Assessor of City of Long Beach* (96 AD3d 1053 [2d Dept 2012]).  That case is grounded on a misapplication of our decision in *Matter of Sterling Estates* (66 NY2d 122).  In *Circulo*, the Appellate Division interpreted RPTL 524 (3) and announced that it contained an ownership requirement: "RPTL article 5 requires that the *property owner* file a complaint or grievance to obtain administrative review of the tax assessment" (*id.* at 1056 [emphasis in original]).  The Court gave no reasoning and cited no rules of statutory construction or legislative history to reach its holding, but instead cited only our decision in *Sterling*.  In *Sterling*, however, we did not suggest—much less decide—that the *owner* of a property must file the administrative complaint.  Instead, we emphasized that "it is essential that sufficient facts detailing the taxpayer's complaint be presented to the assessors so that realistic efforts at adjustment can be made" (*Sterling*, 66 NY2d at 125).  Our holding in *Sterling* turned on the substantive incompleteness of the administrative petition, not the identity of the filer (*id.* at 127).  Thus, to the extent that *Circulo* is inconsistent with our holding today, it should not be followed.

III

In sum, we hold that DCH, as a net lessee contractually obligated to pay the real estate taxes of the subject property is included within the meaning of "the person whose property is assessed" under RPTL 524 (3).  Accordingly, the judgment appealed from and the Appellate Division order brought up for review should be reversed, with costs, and the motion to dismiss the consolidated proceeding with respect to 700 Waverly Avenue, Mamaroneck, New York denied.

Judgment appealed from and Appellate Division order brought up for review reversed, with costs, and motion to dismiss the consolidated proceeding with respect to 700 Waverly Avenue, Mamaroneck, New York denied. Opinion by Judge Wilson. Chief Judge DiFiore and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided June 16, 2022