Matter of Anonymous v Molik (2018 NY Slip Op 04779)

Matter of Anonymous v Molik

2018 NY Slip Op 04779 [32 NY3d 30]

June 28, 2018

Garcia, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 31, 2018

[*1]

In the Matter of Anonymous, an Intermediate Care Facility, Respondent,
v
David Molik et al., Appellants.

Argued June 7, 2018; decided June 28, 2018

Matter of Anonymous v Molik, 141 AD3d 162, reversed.

{**32 NY3d at 31} OPINION OF THE COURT

Garcia, J.

Three sexual assaults, committed by the same resident, occurred within a six-month period at petitioner's residential health care facility. The Justice Center for the Protection of{**32 NY3d at 32} People with Special Needs, acting pursuant to Social Services Law § 493, required petitioner to undertake certain remedial measures to correct the systemic problems that led to the attacks. We hold that the Justice Center acted within its statutory authority.
I.
Petitioner operates a 12-bed intermediate health care facility licensed to provide services to people with various cognitive and developmental disabilities. In June 2013, after a resident aide briefly left the facility's common room, a male resident (S.H.) engaged in inappropriate sexual contact with a female resident. This incident was the third time in six months that S.H. had sexually assaulted another resident.
The Justice Center thereafter investigated a report of neglect against the aide and residence supervisor. The Justice Center found the allegations against the two employees to be unsubstantiated, reasoning that there were no policies or requirements in place that prohibited staff from leaving the common room unattended. However, the Justice Center substantiated allegations of neglect against petitioner (the facility) for failing to implement clear staff supervision protocols and for failing to modify S.H.'s care plan to increase his level of supervision after the first two [*2]attacks. The Justice Center noted:
"Failure to have these policies in place exposed [the victim] to harm or the risk of harm, but any culpability by other facility staff is mitigated by these systemic failures. Based on these findings, this case is being referred to the Office for People With Developmental Disabilities [OPWDD] and the Justice Center's Oversight and Monitoring Unit to monitor that appropriate corrective actions have been put into place."
Petitioner thereafter asked the Justice Center to amend the report to "unsubstantiated" and to seal it.
Following a hearing, the administrative law judge denied petitioner's request, concluding that "[t]he Justice Center has established by a preponderance of evidence that [petitioner's] lack of action constituted neglect and the proper level is category four" under Social Services Law § 493 (4) (d). The ALJ reasoned, in part, that "[t]he Agency needs to balance [S.H.'s] freedom with the safety and security of the other residents," {**32 NY3d at 33}and that, at the time of the third incident, "the Agency policies and procedures left the service recipients in the home vulnerable because [S.H.] was unsupervised during the day." The ALJ explained that Social Services Law § 493 "clearly allows a category four finding" of neglect against a facility "when individual culpability is mitigated by system[ic] problems at a facility," and "[t]he fact that the individuals were unsubstantiated does not negate a finding against a facility." The ALJ's determination was then adopted by respondent David Molik, the Director of the Justice Center's Administrative Hearings Unit, who rendered a final determination denying petitioner's request and directing petitioner to develop and implement a plan to remediate its deficient conditions.
Petitioner then brought this CPLR article 78 proceeding seeking to annul the Justice Center's determination, contending that (1) Social Services Law § 493 did not authorize the Justice Center to substantiate a finding of neglect against petitioner, and (2) the Justice Center's determination was not supported by substantial evidence.
Upon transfer, the Appellate Division unanimously granted the petition and annulled the Justice Center's determination, holding that "the Justice Center acted in excess of its statutory authority in making a finding of neglect against petitioner" (Matter of Anonymous v Molik, 141 AD3d 162, 164 [3d Dept 2016]). The Court determined that, "pursuant to Social Services Law § 493 (3) (a), the only circumstance under which the Justice Center could substantiate a report of neglect against a facility or provider agency is where an incident of neglect has occurred but the subject cannot be identified—a situation that is plainly not present here" (id. at 167). The Court rejected the Justice Center's argument that the Justice Center was "empowered to 'substantiate' an allegation of neglect against petitioner by virtue of its statutory authority to make a concurrent finding under Social Services Law § 493," believing that "the scope of that 'concurrent finding' is expressly circumscribed by the statute" such that "the only 'concurrent finding' that may be made is 'that a systemic problem caused or contributed to the occurrence of the incident' " (id., quoting Social Services Law § 493 [3] [b]).
The Court found further support for its conclusion in Social Services Law § 493 (4), which "requires that all instances of neglect or abuse be categorized into one or more of four enumerated categories," but indicates that "categorization is predicated {**32 NY3d at 34}upon the existence of a '[s]ubstantiated report[ ] of abuse or neglect' " (id. at 168, citing Social Services Law § 493 [4]). Reasoning that "the statute does not provide for categorization of a 'concurrent finding' into one of the four categories," the Court determined that "a 'concurrent finding' cannot constitute—nor be equated with—a finding of neglect" (id.). Accordingly, the Court concluded that, "under these circumstances, the Justice Center was simply without authority to 'substantiate' a report of neglect against petitioner" (id. at 169).
We granted the Justice Center's application for leave to appeal (29 NY3d 902 [2017]), and now reverse.
II.
In 2012, the Protection of People with Special Needs Act was enacted to create a set of uniform safeguards to bolster the protection of people with special needs in New York (L 2012, ch 501, § 2, part A, § 1). To implement those safeguards, the act created the New York State Justice Center for the Protection of People with Special Needs, an agency empowered to receive, investigate, and respond to allegations of abuse, neglect, or other "reportable incidents" involving disabled residents receiving services in licensed facilities or provider agencies. Among other things, the Justice Center maintains a statewide central register—the Vulnerable Persons' Central Register—which operates a 24-hour hotline created to field allegations of reportable incidents. Upon receipt of an allegation, the [*3]Justice Center must promptly commence an investigation, or it may delegate its investigatory responsibility to an oversight agency or to the facility or provider agency (Social Services Law §§ 488 [7]; 492 [3] [c]).
Social Services Law § 493 details the possible findings and consequences in connection with an investigation of abuse or neglect allegations. Following an investigation, a finding must be made, based on a preponderance of the evidence, that the allegation is "substantiated" or "unsubstantiated." Social Services Law § 493 (3) (a) provides that the finding
"shall indicate whether: (i) the alleged abuse or neglect is substantiated because it is determined that the incident occurred and the subject of the report was responsible or, if no subject can be identified and an incident occurred, that, the facility or provider agency was responsible; or (ii) the alleged{**32 NY3d at 35} abuse or neglect is unsubstantiated because it is determined not to have occurred or the subject of the report was not responsible, or because it cannot be determined that the incident occurred or that the subject of the report was responsible."
The following paragraph, (b), provides: "In conjunction with the possible findings identified in paragraph (a) of this subdivision, a concurrent finding may be made that a systemic problem caused or contributed to the occurrence of the incident" (Social Services Law § 493 [3] [b]). While all "findings" must be reported in the vulnerable persons' central register (Social Services Law § 493 [1]), a report "that is found to be unsubstantiated" must be "sealed immediately" (Social Services Law § 493 [3] [d]).
The statute also enumerates the various consequences that are triggered in the event of a "substantiated" report of abuse or neglect. Specifically, subdivision (4) establishes four categories of "substantiated" reports based on the nature and severity of the offending conduct and/or the facility conditions. Categories one through three largely concern culpable conduct by individual employees, such as intentionally causing serious physical injury, falsifying records, or obstructing an investigation (see Social Services Law § 493 [4] [a]-[c]). Category four includes incidents of substantiated abuse or neglect where the perpetrator "cannot be identified," as well as situations where "conditions at a facility or provider agency . . . expose service recipients to harm or risk of harm" but "staff culpability is mitigated by systemic problems such as inadequate management, staffing, training or supervision" (Social Services Law § 493 [4] [d]).
Those categorizations, in turn, trigger corresponding consequences, which may include disciplinary action, prevention and remediation requirements, and/or state agency oversight. A category one finding, for instance, results in "permanent placement of the subject of the report on the vulnerable persons' central register" (Social Services Law § 493 [5] [a]). A category four finding requires the facility or provider agency to "develop and implement a plan of prevention and remediation of the deficient conditions," that must "identify any systemic problem that led to the determination . . . and include suggested corrective measures" (Social Services Law § 493 [5] [c]). That plan must then "be approved by and its implementation monitored by the [J]ustice [C]enter or the state oversight agency, as appropriate" {**32 NY3d at 36}(id.). In addition, with respect to facilities or provider agencies "in receipt of medical assistance," any "substantiated reports of abuse or neglect" that "may be relevant to an investigation of unacceptable practices" must be "forwarded by the [J]ustice [C]enter to the office of the Medicaid inspector general" (Social Services Law § 493 [2]).
III.
Petitioner contends that Social Services Law § 493 (3) (a) (i) provides the exclusive grounds for a "substantiated" finding of abuse or neglect. According to petitioner, under that provision, the Justice Center's authority to find neglect against a facility (as opposed to an individual employee) is limited to those incidents where "no subject can be identified"—that is, where an incident occurred but the investigation failed to identify a responsible employee. Petitioner therefore argues that the Justice Center lacks the statutory authority to substantiate a finding of abuse or neglect against a facility where, as here, a subject employee is identified but deemed not personally responsible for the incident. In other words, according to petitioner, the Justice Center is not authorized to [*4]substantiate a report of abuse or neglect against a facility where the incident results solely from systemic deficiencies, rather than any employee wrongdoing.
The parties' primary disagreement concerns the significance of the "concurrent finding" provision, section 493 (3) (b). That provision specifies that, in conjunction with the possible findings identified in (3) (a)—i.e., "substantiated" or "unsubstantiated"—a "concurrent finding may be made that a systemic problem caused or contributed to the occurrence of the incident" (Social Services Law § 493 [3] [b]). A "concurrent finding" is therefore permitted whenever systemic problems caused or contributed to an incident, regardless of whether the allegations against an individual employee are substantiated. Importantly, that provision supplies the authority to make a "concurrent finding" against a facility under the circumstances present in this case: where a subject employee is identified, but deemed not responsible.
The Justice Center contends that a "concurrent finding" amounts to a substantiated finding of abuse or neglect. Petitioner contends that it does not.{**32 NY3d at 37}
A.
"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]). Generally, courts "look first to the statutory text, which is the clearest indicator of legislative intent" (Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012] [internal quotation marks omitted]). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (State of New York v Patricia II., 6 NY3d 160, 162 [2006] [internal quotation marks omitted]).
The "literal language of a statute" is generally controlling unless "the plain intent and purpose of a statute would otherwise be defeated" (Bright Homes v Wright, 8 NY2d 157, 161-162 [1960]). Where "the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the [statute's] enactment," courts may "[r]esort to legislative history" (Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y., 86 NY2d 198, 204 [1995]). In interpreting statutory language, "all parts of a statute are intended to be given effect" and "a statutory construction which renders one part meaningless should be avoided" (Rocovich v Consolidated Edison Co., 78 NY2d 509, 515 [1991]). A statute "must be construed as a whole" and "its various sections must be considered together and with reference to each other" (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]).
[*5]B.
The text of Social Services Law § 493 (3) does not specify whether a "concurrent finding," by itself, authorizes the Justice Center to substantiate a report of abuse or neglect against a facility or provider agency. In the context of the statute—which, notably, is entitled "[a]buse and neglect findings"—it is clear that the legislature intended a "concurrent finding" to constitute a substantiated finding of abuse or neglect. Petitioner's contrary reading fails to attribute any independent significance to the "concurrent finding" provision—a result that would be inconsistent with the statutory text, the legislative history, and{**32 NY3d at 38} the underlying purpose of the statute.[FN1]
Under petitioner's construction of the statute, the Justice Center's determination that a "systemic problem" caused or contributed to an incident of abuse or neglect would not, by itself, trigger any consequences. Petitioner maintains that the only "substantiated" findings of neglect are those provided in section 493 (3) (a) (i), and that only those "substantiated" findings are categorized and remediated under subdivisions (4) and (5); a "concurrent finding," then, would not trigger categorization under subdivision (4) and, as such, would not trigger corrective action under subdivision (5). The statute's remedial provisions would be entirely inapplicable unless, under (3) (a) (i), a particular employee is also deemed responsible, or no perpetrator can be identified (Social Services Law § 493 [3] [a] [i]). The Justice Center would therefore be unable to take corrective action where, as here, an employee is identified as the "subject" of a report but is ultimately found not responsible because the incident was caused by deficient facility conditions rather than any employee wrongdoing (see Social Services Law § 493 [3] [a] [ii]). It would similarly be unable to forward information to the Medicaid Inspector General that may be relevant to an investigation of unacceptable practices, including facility practices amounting to fraud or abuse (see Social Services Law § 493 [2]). And where an employee is identified but it cannot be determined that he or she was responsible, the report of abuse or neglect must be "sealed immediately," even if systemic deficiencies are present and the facility's culpability is evident (see Social Services Law § 493 [3] [d]). In short, under petitioner's reading, a "concurrent finding," without more, would carry no ramifications, leaving a gap in the Justice Center's authority where, as here, an employee is identified but deemed not responsible for the incident (see Social Services Law § 493 [3] [a] [ii]).
{**32 NY3d at 39}Petitioner's narrow construction of the statute would paradoxically leave the Justice Center powerless to address many systemic issues, defeating the purpose of the act and preventing the Justice Center from protecting vulnerable persons where it is most critical to do so. As noted throughout the text and legislative history, the statutory overhaul embodied in the act was necessary not only to address isolated incidents of abuse and neglect, but also to resolve systemic problems, such as inadequate staffing, training, and supervision, which often cause or contribute to incidents of abuse and neglect (see Executive Law § 553 [1] [e]; see also Clarence J. Sundram, Governor's Special Advisor on Vulnerable Persons, The Measure of a Society: Protection of Vulnerable Persons in Residential Facilities Against Abuse & Neglect at 6, 7, 37-41 [Apr. 2012]; Mem of Council on Children and Families, Bill Jacket, L 2012, ch 501 at 50). Indeed, systemic deficiencies may present a greater hazard to vulnerable residents than do discrete instances of employee misconduct, since employee-related incidents can often be remedied [*6]through targeted disciplinary action. Latent systemic problems, by contrast, are often more challenging to identify and more complicated to rectify—and therefore more likely to recur.
The facts of this case are particularly instructive. Despite two prior incidents of sexual assault involving the same offending resident, petitioner failed to implement effective remedial measures, and the facility's deficient policies enabled a third attack by the same resident. Petitioner nonetheless contends that the Justice Center is not authorized to require it to implement an approved plan of prevention and remediation or to impose agency oversight so as to ensure that petitioner's deficient conditions are sufficiently (and finally) rectified. That construction would perversely allow this dangerous cycle to continue: employee conduct could not be "substantiated" because it does not violate facility policies, but facility policies would remain ineffective because the Justice Center lacks authority to implement change. The legislature cannot have intended such an absurd result.
Consistent with the goals of the act, the Justice Center's interpretation of the statute would allow for a finding of neglect against a facility wherever "a systemic problem caused or contributed" to an incident—regardless of whether the allegations against an individual employee are substantiated—thereby enabling the Justice Center to direct the facility to{**32 NY3d at 40} formulate a plan to fix the systemic problem. Indeed, by using the phrase "systemic problems" in the category four provision (Social Services Law § 493 [4] [d])—the same phrase employed in the "concurrent finding" provision (Social Services Law § 493 [3] [b])—the statute explicitly places these incidents into the fourth category for findings of abuse and neglect. In other words, category four expressly contemplates those situations where, as here, an employee bears little or no personal responsibility for an incident but the allegations are nonetheless substantiated because the incident was caused by systemic issues for which the facility is accountable. The statute then sensibly requires the facility to develop and implement a plan of prevention and remediation, monitored by the Justice Center or another appropriate oversight agency (see Social Services Law § 493 [5] [c]). Under this interpretation, the statute comprehensively addresses all possible causes of an incident of abuse or neglect, and empowers the Justice Center to take remedial steps whenever a systemic problem caused or contributed to an incident.[FN2]
This construction also furthers the Justice Center's intended role as the central agency responsible for managing and overseeing the incident reporting system, and for imposing or delegating corrective action (see Social [*7]Services Law § 492 [3] [c]; Executive Law § 553). As the act and its legislative history make clear, preexisting state systems, which dispersed oversight responsibility among at least six state offices, suffered from "numerous gaps and inconsistencies" as well as substantial "variations across state agencies" (Senate Introducer's Mem in Support, Bill Jacket, L 2012, ch 501 at 12, 14, 2012 McKinney's Session Laws of NY at 1970, 1972). The act{**32 NY3d at 41} sought to reconcile those discrepancies and conform practices across various state agencies by creating the Justice Center—"a new entity that would cut across bureaucratic lines and have as its primary purpose and responsibility the protection of the health, safety and welfare of vulnerable persons" (Bill Jacket, L 2012, ch 501 at 14-15, 2012 McKinney's Session Laws of NY at 1972). By design, the Justice Center is instilled with the primary authority to "requir[e] providers to implement corrective action plans to prevent future incidents of abuse and neglect" (Bill Jacket, L 2012, ch 501 at 15, 2012 McKinney's Session Laws of NY at 1972). The dissent's contrary assertion—that OPWDD, rather than the Justice Center, is vested with oversight over facility deficiencies—evokes the fractured, decentralized system that the legislature deliberately abandoned. At bottom, that construction is inconsistent with the statute's primary goal of consolidating broad regulatory compliance authority over abuse and neglect reports in a single state agency: the Justice Center.
IV.
The Justice Center's construction of Social Services Law § 493 gives meaning to each provision of the statute, enabling it to address systemic issues at a facility or provider agency regardless of whether or not allegations against a particular employee are also substantiated. Consistent with the legislative history and underlying purpose of the statute, this interpretation assigns to one state agency—the Justice Center—the primary and comprehensive responsibility for protecting a particularly vulnerable population. Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to the Appellate Division for consideration of issues raised but not determined on appeal to that Court.

Rivera, J. (dissenting). The Social Services Law authorizes the Justice Center for the Protection of People with Special Needs to investigate allegations of abuse or neglect at a facility or provider agency that serves persons with disabilities, to make findings as to whether abuse or neglect occurred, and to identify, if possible, the responsible party (see Social Services Law § 492 [3] [c]; see also Executive Law § 553 [1]). The Justice Center may also, upon a finding of an incident of abuse or neglect, make a separate concurrent finding that an institutional "systemic problem caused or contributed to the occurrence of{**32 NY3d at 42} the incident" (Social Services Law § 493 [3] [b]). For certain acts of abuse or neglect, or where the conditions at a facility or provider agency "expose service recipients to harm or risk of harm[,] [and the] staff culpability is mitigated by systemic problems" (Social Services Law § 493 [4] [c], [d]), the Justice Center is empowered to require the development and implementation of a plan of prevention and remediation to address the deficient conditions, which may include suggested corrective measures (Social Services Law § 493 [5] [c]). As appropriate, the Justice Center must also approve and monitor implementation of this plan (id.).
[*8]
When an investigation does not lead to a finding that the triggering incident amounted to abuse or neglect, Social Services Law § 493 does not authorize the Justice Center to make a concurrent finding of a systemic problem at the facility or provider agency, prompting remedial measures. Since that is what happened here, I would affirm the Appellate Division order that annulled the Justice Center's determination of neglect against petitioner.[FN1]
Petitioner is an operator of a health care facility licensed by New York State's Office for People with Developmental Disabilities (OPWDD) to provide services to persons with cognitive and physical disabilities. As such it is subject to oversight by OPWDD and the Justice Center, which includes investigations by the Justice Center of allegations of abuse or neglect at the facility. The governing statutory provisions are set forth in{**32 NY3d at 43} Social Services Law, article 11, the Protection of People with Special Needs Act, specifically Social Services Law § 493. This appeal concerns the proper interpretation of the statutory language authorizing the Justice Center to take certain action based on the results of its investigation. Section 493 requires painstaking analysis because the intent of certain statutory language is not obvious upon a first review. It is fair to say that some paragraphs require multiple reads before their relationship to other paragraphs may be appreciated. Nevertheless, Social Services Law § 493 sets forth a comprehensible framework for addressing findings of abuse or neglect.
Social Services Law § 493 (3) (a) states that in response to an allegation of abuse or neglect, findings must be based on a preponderance of the evidence and indicate:
"(i) the alleged abuse or neglect is substantiated because it is determined that the incident occurred and the subject of the report was responsible or, if no subject can be [*9]identified and an incident occurred, that, the facility or provider agency was responsible; or (ii) the alleged abuse or neglect is unsubstantiated because it is determined not to have occurred or the subject of the report was not responsible, or because it cannot be determined that the incident occurred or that the subject of the report was responsible."
According to its terms, Social Services Law § 493 (3) (b) authorizes a "concurrent finding" that a systemic problem "caused or contributed to the occurrence of the incident," only "[i]n conjunction with the possible findings identified" in subdivision (3) (a). A concurrent finding, thus, is not freestanding, but tied to a finding of abuse or neglect as described in section 493 (3) (a), although not necessarily a finding in which the responsibility of the individual named in the report can be "substantiated." Considering the paragraphs together, a concurrent finding can be made in those cases where: (1) the abuse or neglect occurred and the subject of the report is responsible; (2) no subject can be identified, but the facility or provider agency is held responsible, akin to respondeat superior liability;[FN2] (3) the subject of the report is not responsible, but the incident occurred;{**32 NY3d at 44} or (4) it cannot be determined if the subject of the report is responsible, but the incident occurred (see Social Services Law § 493 [3] [a], [b]). In each of these situations, the Justice Center necessarily has found that the incident that gave rise to the allegation in fact occurred and constitutes abuse or neglect, even if it could not substantiate the finding against the subject of the report. Contrary to the majority's interpretation of Social Services Law § 493, a concurrent finding of a systemic problem does not constitute a finding of abuse or neglect in itself, but rather a finding that other conduct or institutional policies have a causative link to the abuse or neglect that occurred and for which an individual, facility, or provider agency is found responsible.
This construction of the statute tracks both the language and the framework of the relevant Social Services Law, as well as the regulations that govern reporting, recording, and investigation of reportable incidents and notable occurrences (see Social Services Law §§ 488-497; 14 NYCRR 624.5). These provisions establish the procedures for investigating allegations of abuse or neglect, archiving a substantiated report of an incident in the vulnerable persons' central register, and designating how long a finding shall be sealed based on an increasing scale of severity of conduct as categorized in the statute. In the case of a finding of an institutional-based systemic problem, the Social Services Law also mandates development and implementation of a prevention and remediation plan, to be approved and monitored by the "[J]ustice [C]enter or the state oversight agency, as appropriate" (Social Services Law § 493 [5] [c]). Requiring a finding of abuse or neglect as the foundation for a concurrent finding ensures that the abuse or neglect is properly recorded and the facility or provider agency is subjected to corrective action by the Justice Center or state agency.
To read the statute as the majority does here, so that the concurrent finding may stand on its own as the finding of abuse or neglect in order to bring the petitioner within subdivisions (4) (d) and (5) (c), the Court has to ignore the language of{**32 NY3d at 45} section 493 (3) (b). We are not at liberty to do so because "[w]here words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 76). If the legislature intended that a concurrent finding would serve [*10]independently as a finding of abuse or neglect, bringing the facility or provider under section 493 (4) (d) and (5) (c), it would have said so in subdivision (3) (b), or included a "finding of a systemic problem" in the list of possible findings set forth in subdivision (3) (a). Indeed, if the legislature's intent had been to treat a systemic finding as the sole basis for action under section 493, there would be no need to refer to findings of a systemic problem as concurrent to some other finding. That reading is impermissible, as we may not give meaning to a statute that renders language superfluous (see Kimmel v State of New York, 29 NY3d 386, 393 [2017]).
Significantly, and contrary to petitioner's argument, nothing in subdivision (3) (a) prevents the Justice Center from finding that a facility or provider agency is responsible for alleged neglect despite not having been initially identified as a responsible party. Any allegation of abuse or neglect of a service recipient in the care of a facility or provider agency that does not expressly identify the entity as the responsible party is by nature referencing the custodial circumstances, and thus also necessarily implicates the facility or provider agency as a possible responsible party. In other words, a facility or provider agency could be named in an allegation of abuse or neglect that triggers an investigation under Social Services Law § 492 (3) (c), or the facility or provider agency could be identified as the responsible party during the course of the investigation and eventually reported as such in accordance with section 493 (3) (a), despite the allegation originally naming another party as responsible.[FN3] It would lead to absurd results if we were to interpret subdivision (3) (a) of section 493 to permit the facility{**32 NY3d at 46} or provider agency to be found responsible in those situations where an incident occurs and no subject can be identified, but not where an identified subject is found not responsible for a confirmed incident of abuse or neglect. In both scenarios a vulnerable person has been abused or neglected and it is of no moment that the party initially alleged to be responsible is found not to be [*11]culpable, since the true responsible party (individual or institutional) will be identified as a result of a duly conducted investigation. "Although statutes will ordinarily be accorded their plain meaning, it is well settled that courts should construe them to avoid objectionable, unreasonable or absurd consequences" (Long v State of New York, 7 NY3d 269, 273 [2006]).
Construing section 493 (3) (b) as an adjunct to a finding of abuse or neglect arising from the alleged incident harmonizes the various paragraphs of Social Services Law § 493 as it allows for such a finding to follow, both from a substantiated report against a facility as well as from an unsubstantiated report against a subject who is not found responsible. In this way, the Justice Center can focus on the source of the incident and those systemic problems that are causatively linked to the reported and confirmed abuse or neglect.
The majority opines that unless Social Services Law § 493 (3) (b) constitutes an independent finding of neglect, systemic problems at facilities and provider agencies would not be addressed (majority op at 
37-39). This is incorrect. Both OPWDD and the Justice Center have authority to conduct investigations and review reportable incidents (see 14 NYCRR 624.5 [i]). When OPWDD investigates or reviews an incident or occurrence and makes recommendations to the facility or provider agency, the facility or provider agency must implement or address each recommendation in a timely manner (see id.). When the Justice Center makes findings concerning reports of abuse{**32 NY3d at 47} or neglect under its jurisdiction and issues a report or recommendation to the facility or provider, the facility or provider must make a written response identifying the action taken in response and submit it to OPWDD in the manner specified by OPWDD (see id. 
§ 624.5 [l]). Social Services Law § 493 (5) (b) and (c) provide that either the 
Justice Center or a state oversight agency is responsible for approving and 
implementing a plan to reduce the risk of or prevent the reoccurrence of 
incidents of abuse or neglect and remediate deficient conditions, which, 
contrary to the majority's position (majority op at 41), indisputably provides an oversight role for state agencies other than the Justice Center. Also, OPWDD is authorized to perform periodic reviews and suspend or limit a provider's operating certificate and impose penalties (see Mental Hygiene Law §§ 16.11, 16.17). Thus, a systemic problem not tied to an actual incident of abuse or neglect will not escape government oversight and response.
The fact is that the legislature gave the Justice Center broad authority, but that authority is limited by statute, including Social Services Law § 493. We recognize those limitations by reading section 493 to require a finding of abuse or neglect before a concurrent finding of a systemic problem may be brought within the statute's corrective action mandate, and permitting a substantiated report against a facility or provider agency in cases where the reported abuse or neglect is confirmed, even if an individual is found not responsible. An interpretation that holds the facility or agency provider responsible even if an individual is not responsible or the individual's responsibility is mitigated by institutional policy, also furthers the legislative purpose behind the creation of the Justice Center, which contributes to the "effective investigation of . . . allegations of reportable incidents that are accepted by the statewide vulnerable persons' central register," and "the management of reportable incidents affecting the safety of vulnerable persons, including cases of systemic problems" (Executive Law § 553 [1] [a], [e]).
Here, the Justice Center made no adverse findings against the persons named in the allegation of neglect that triggered the investigation. Specifically, it concluded that no conduct by them constituted neglect. According to the investigator's report:
"the preponderance of evidence does not support an allegation of neglect in this matter, but does depict{**32 NY3d at 48} a problematic practice at the facility that delayed the intervention by staff in this matter. Therefore it is the finding of this investigator that this incident is unsubstantiated for neglect, with a concurrent finding of a systemic problem in the facility that will be addressed through the recommendations in this matter."
Based on the investigation, the Justice Center found the allegations against the individuals unsubstantiated, and subsequently sealed the findings, while finding the allegations to be substantiated as a category four case of neglect against the facility. This category four designation is not permissible under Social Services Law § 493 (3) (b), because a concurrent finding under that paragraph is an adjunct to findings under subdivision (3) (a). If the investigation had led to a finding of neglect by petitioner, rather than the named individuals, that could have been the basis of a [*12]substantiated report against the petitioner, and if the investigation also led to a concurrent finding of a systemic problem, that would have supported the category four designation. Since that is not what happened here, the substantiated finding of neglect against petitioner based on a concurrent finding was error, and I would affirm the Appellate Division.[FN4] 
Chief Judge DiFiore and Judges Stein, Fahey, Wilson and Feinman concur; Judge Rivera dissents in an opinion.
Order reversed, with costs, and matter remitted to the Appellate Division, Third Department, for consideration of issues raised but not determined on appeal to that Court.

Footnotes

Footnote 1:The dissent's conclusion that a concurrent finding must be "tied to" a substantiated finding of abuse or neglect is belied by the language of the statute. In fact, the concurrent finding provision says just the opposite: it permits a concurrent finding in conjunction with either of the "possible findings" identified in paragraph (a)—substantiated or unsubstantiated (Social Services Law § 493 [3] [b]). That is, the agency must have completed its investigation and reached one of the conclusions enumerated in paragraph (a) before it may issue a concurrent finding. But the agency is not limited to doing so only where it has substantiated a report of abuse or neglect.

Footnote 2:Contrary to the dissent's suggestion (dissenting op at 
42 n 1), the statute does not limit the "subject of the report" to an individual, rather than a facility. The statutory definition of a "subject of the report" (which incorporates the defined term "custodian") specifically includes a facility "operator"—i.e., the facility itself (see Social Services Law § 488 [2], [12]). That definition does not exclusively use "personal pronouns," nor does it exclusively refer to a "natural person" (dissenting op at 
42 n 1). Indeed, if a facility could not be the "subject of the report," it would not have standing to invoke the various rights and remedies provided in the statute—including the right to seek amendment of a substantiated report (Social Services Law §§ 493 [3] [c]; 494 [1] [a])—exactly as petitioner did here. Confusingly, the dissent contends that petitioner "does not have standing" here because a facility cannot be the subject of the report (dissenting op at 
42 n 1), but also maintains, without citation, that a facility can somehow be the "named" party in a substantiated report of abuse or neglect (dissenting op at 
45).

Footnote 1:Petitioner does not have standing to request the report be amended pursuant to Social Services Law §§ 493 (3) (c) and 494. Those sections permit a natural person to request the amendment of a substantiated report through an administrative review process, subject to judicial review. These provisions specifically rely on personal pronouns to refer to the subject of the report. For example, Social Services Law § 495 (4) states that "[a] custodian shall be subject to immediate termination if he or she is convicted of any [misdemeanor or felony] that relates directly to the abuse or neglect of a vulnerable person, or is placed on the register of substantiated category one cases of abuse or neglect" (see also Social Services Law § 493 [3] [c] ["If the report is substantiated, the justice center shall also notify the subject of the report of his or her rights to request that the report be amended"]). Clearly, only an individual can be subject to immediate termination or can be convicted of a misdemeanor or felony. Presumably, because the Justice Center's investigator's findings are final (see 14 NYCRR 624.5 [j] [3]), a facility like petitioner could seek to annul or amend the Justice Center's determination in a CPLR article 78 proceeding. Since neither party here objects to petitioner having invoked review by an administrative law judge with de novo appellate review prior to commencing the instant CPLR article 78 proceeding, I discern no basis to reverse on the ground that the petition should be dismissed for lack of standing.

Footnote 2:
"Under the doctrine of respondeat superior, an employer will be liable for the negligence of an employee committed while the employee is acting in the scope of his employment. An employee acts in the scope of . . . employment when . . . doing something in furtherance of the duties [owed] to [an] employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities" (Lundberg v State of New York, 25 NY2d 467, 470 [1969] [citation omitted]).
Footnote 3:Contrary to the majority's understanding (majority op at 
40 n 2), being named in an allegation of abuse or neglect is not synonymous with being a subject of a report. The facility here, for example, was named in the report, even though the subjects of the report were natural persons. The most logical reading of Social Services Law § 493 (3) (a) is that only a natural person may be the subject of a report, and when no culpable natural person can be identified, the Justice Center may find the facility or provider agency to be responsible. After all, the paragraph provides that"[a] report shall not be determined to be substantiated or unsubstantiated solely because the subject of a report resigns during an investigation" (Social Services Law § 493 [3] [a]). This is also why category four, alongside of systemic problems at a facility that mitigate staff culpability, also includes "instances in which it has been substantiated that a service recipient has been abused or neglected, but the perpetrator of such abuse or neglect cannot be identified" (Social Services Law § 493 [4] [d]). What is "confusing" is a reading of the statute that necessitates that personal pronouns apply to facilities and provider agencies and contemplates that they might "resign" during an investigation. My reading is consistent with subdivision (3) (c) as well, which makes clear that the "subject of the report" and "the facility or provider agency where the abuse or neglect was alleged to have occurred" are distinct parties, and requires the Justice Center to "notify the subject of the report of his or her rights."

Footnote 4:I take no position on whether the investigative findings support a conclusion that petitioner was responsible for neglect based on the underlying incident, regardless of any determination that petitioner's policies reflect a systemic problem.