# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 127
In the Matter of Penny Mintz, &c.,
   Appellant,
  v.
The Board of Elections in the
City of New York,
   Respondent,
Rachel Lavine,
  Intervenor-Respondent.

Arthur Z. Schwartz, for appellant.
Jane L. Gordon, for respondent.
Roberta A. Kaplan, for intervenor-respondent

MEMORANDUM:

The order of the Appellate Division should be affirmed, without costs.

Assuming without deciding that the proceeding was properly commenced, the petition was properly denied. Election Law § 6-132 directs, among other things, that the public office or party position sought be identified on the designating petition. Further,

- 1 -

where, as here, a political party provides by rule for equal representation of the sexes on its state committee, "the designating petitions . . . shall list candidates for such party positions separately by sexes" (Election Law § 2-102[4]).  Thus, the courts below did not err in denying the petition to validate the designating petition due to the failure to specify whether the office sought was that of male or female member of the state committee (see Matter of Bosco v Smith, 104 AD2d 462 [2d Dept], affd 63 NY2d 698 [1984]).  Petitioner's remaining contentions do not afford a basis for reversal.

Matter of Mintz v Board of Elections

No. 127

WILSON, J. (dissenting):

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government" (<u>Reynolds v Sims</u>, 377 US 533, 555 [1964]).  Penny Mintz would like to serve as a Member of the Democratic State Committee for the 66th Assembly District.  One

of the two positions is reserved for males; the other for females. On July 11, 2018, she submitted petitions containing a sufficient number of signatures to the New York City Board of Elections. On at least seven dates after that through July 20th, the Board of Elections published a record of designating petitions that listed Ms. Mintz as a candidate for the female position on the state committee. On August 1, however, the Board removed Ms. Mintz from the ballot, on the ground that the failure of her designating petitions to identify her as female constituted a "prima facie defect," invalidating her petitions. It is undisputed that Ms. Mintz is female, has always identified as female, and is eligible to run for the position she sought.

The Board contends that because her petitions did not identify her as female, they did not comply with subdivision 4 of section 2-102 of the Election Law. That subdivision reads as follows:

> The state committee may provide by rule for equal representation of the sexes on said committee. When any such rule provides for equal representation of the sexes, the designating petitions and primary ballots shall list candidates for such positions separately by sex.

Respondents argue that even if few or no voters supporting Ms. Mintz's appearance on the ballot thought she was running for the male position on the State Committee, that information represents required content under state law. They urge that the Appellate Division's decision in <u>Bosco v Smith</u>, summarily affirmed by our Court, holds that content omissions, as opposed to matters of form, are fatal to balloting petitions (104 AD 2d 462). I disagree for two reasons. First, the plain words of subdivision 4 do not require identification of the gender of the prospective candidate, but instead require that a petition

"list the candidates for such positions separately by sex." Second, even were the language ambiguous, <u>Bosco</u> and other cases like it, which precede the 1996 Ballot Access Law amendments, are inconsistent with the legislative command in that law and have been legislatively supplanted.

As to the first point, I go grocery shopping from time to time, and have asked my family to give me a list separately listing refrigerated from non-refrigerated items (so that I can buy the cold items last, to better preserve them on the way home). One day, my family gives me a list that has only milk, ice cream, yogurt and frozen waffles. The list does not say "refrigerated items," but my family has done exactly what I've asked: separately listed refrigerated from non-refrigerated items. That is, section 2-102 contains no requirement that a petition state the gender of a candidate (or the position). It would have been very simple for the legislature to say so, but it did not. Instead, the statute requires that petitions "list" – not "identify" – them by sex. "The legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms . . . the court cannot disregard the plain words of a statute even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act" (McKinney's Cons Laws of NY, Book 1, Statutes Section 94; <u>see also</u> <u>Matter of Anonymous v Molik</u>, 2018 NY Slip Op 04779, ¶ 4 ["The 'literal language of a statute' is generally controlling unless 'the plain intent and purpose

of a statute would otherwise be defeated'"], quoting <u>Bright Homes, Inc. v Wright</u>, 8 NY2d

157, 161-162 [1960]).[1]

Alternatively, Respondents contend that the name of the position itself is Female

Member of the Democratic State Committee. The law is at most ambiguous on this point.

New York Election Law Section 1-102 provides that parties may require equal

representation of the sexes on their state committees. But the rules of the Democratic Party

frequently refer to the positions on the State Committee as simply "Members." A wholly

reasonable interpretation of the party rules and the statute is that the title of the office is

Member of the State Committee, and some Member positions have different requirements,

such as the members' sex.

As to the second point, Respondents' more restrictive reading is hitched to <u>Bosco v</u>

<u>Smith</u>, an Appellate Division decision this Court affirmed for reasons stated below in 1984

(104 AD2d 462; 63 NY2d 698). The Election Law has been amended since <u>Bosco</u>

precisely to end this sort of ballot challenge. In 1996, the New York State Legislature

changed the state's Election Law to dispose of technical barriers to running for office. The

changes included removing requirements that petitioner signers list their full names and

ward numbers, and including directives that corrections could be made on the signature

---

[1] One might wonder what purpose the statute could have if interpreted that way. But it makes quite a bit of sense if you think of it in terms of both petitions and ballots. In the case of ballots, it important to separately list the positions by sex so that voters know they may vote for one of each sex, and that the male and female candidates are not competing against each other. In the case of a petition, that concern comes into play only when a petition contains more than candidate.

line, that signers need not fill in information beyond their signatures, and that petitioners would have a three-day period during which they could cure errors found by the Board of Elections (1996 NY Senate-Assembly Bill S7856-A, A111670-A). More generally, the law instructed that the "regulations … promulgated by the state board of elections . . . shall be no more restrictive than is reasonably necessary for the processing of such petitions by the board of elections" (id.). Finally, the legislation included a provision indicating that "this section shall be liberally construed, not inconsistent with substantial compliance thereto and the prevention of fraud" (id.). Insofar as "this section" may be read to only apply to 6-134 and not 2-102 (and its command to list sexes separately), the bill's summary from its sponsor, Senator Joe Bruno, should leave no doubt. The summary explains that the bill repeals section 6-134 and replaces it with a new section 6-134. It lists several changes made in the new 6-134, before stating broadly "provisions relating to the validity and submission of designating petitions are to be liberally construed and substantial compliance is permissible."

Those changes were the result of a long political struggle. When the bill passed, the Assembly Elections Committee Chair, Paul Tokasz, wrote to thank Governor Pataki for his support, explaining that "[t]his legislation. . . includes many reforms which the Assembly had been passing for years. I was delighted that the Governor was able to persuade the Senate to pass the bill . . . Hopefully New York will no longer generate half of all election law litigation in the country" (Letter from Assemblymember Paul Takasz, Bill Jacket, L 1996, Ch 709). Indeed, just four years earlier in the New York Law Journal, then-New

York Attorney General Bob Abrams wrote an op-ed also noting New York's laws had "spawned almost half of all Election Law litigation in the nation" (Bob Abrams, *Comprehensive Election Law Reforms Advocated by State Attorney General; Law Day '92: The Struggle for Justice*, NYLJ, May 1, 1996 at 3 col. 1). The Attorney General decried the system of ballot restrictions that had led to "example after example of candidates being removed from the ballot for trivial errors" and advocated reforms that would encourage people to run for office, instead of the "series of obstacles that only those well versed in the technicalities of the law can overcome" (id.).

The law's Bill Jacket reveals advocates outside of government who had long-advocated reform with rationales in line with the Attorney General's concerns and praised the 1996 law for substantially addressing the problem. Upon the 1996 bill's passage, Andrew Greenblatt, the Executive Director of Common Cause, wrote to Governor Pataki, urging him to sign this election reform into law, because "for years New York's ballot access laws have been the laughingstock of the nation" (Letter from Common Cause, Bill Jacket, L 1996, Ch 709). The New York City Bar Association wrote to the Governor as well, urging him to sign it because "[w]hile the bill passed by the Legislature is not quite as progressive as your Program Bill, it nevertheless goes a long way towards the critically important goal of easing those requirements which govern access to the ballot" (Letter from Bar Association for the City of New York, L 1996, Ch 709). Over and over again, the historical record depicts advocates inside and outside of government pushing for the bill's passage as a long-sought fix to New York's restrictive balloting rules. Thus, even were

one to read words into section 2-102 that do not exist in its text, the 1996 legislation makes clear that we would be frustrating the efforts of the Governor and legislature by doing so.

The Election Law evinces a clear directive that absent a serious concern with fraud, persons wishing to run for office should not be shut out of elections by court-sanctioned strict adherence to technical requirements. No such concerns exist here.

I dissent for the above reasons.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Order affirmed, without costs, in a memorandum.  Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Feinman concur.  Judge Wilson dissents in an opinion, in which Judge Rivera concurs.

Decided August 29, 2018