Matter of O'Grady v Kiyonaga (2019 NY Slip Op 04170)





Matter of O'Grady v Kiyonaga


2019 NY Slip Op 04170


Decided on May 29, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 29, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
MARK C. DILLON
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2017-06730
 (Index No. 68400/16)

[*1]In the Matter of Mary O'Grady, petitioner,
v
Jay Kiyonaga, etc., respondent.


Todd L. Crawford, P.C., Roosevelt, NY, for petitioner.
Letitia James, Attorney General, New York, NY (Judith N. Vale and Linda Fang of counsel), for respondent.



DECISION & JUDGMENT
Proceeding pursuant to CPLR article 78 to review a determination of David Molik, Director of the Administrative Hearings Unit of The New York Justice Center for the Protection of People with Special Needs dated August 5, 2016. The determination adopted the findings of fact and conclusions of law of an Administrative Law Judge dated July 13, 2016, made after a hearing, that the petitioner committed category three neglect as defined by Social Services Law § 493(4)(c), and denied the petitioner's request that the subject substantiated report of neglect dated November 25, 2014, be amended and sealed.
ADJUDGED that the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits, with costs.
The petitioner is a teacher who was employed, at relevant times, by Ferncliff Manor School (hereinafter Ferncliff Manor), a facility that is certified by the Office of People with Developmental Disabilities. In 2013, the New York Justice Center for the Protection of People with Special Needs (hereinafter the Justice Center) received a report alleging that the petitioner committed neglect by, inter alia, failing to properly supervise a service recipient (hereinafter the student) on September 10, 2013. The report alleged that the petitioner failed to properly monitor the actions of the student on a playground on the Ferncliff Manor property and that the student absconded from the property and reached a nearby street, where he was found by a bystander who placed him into a vehicle.
Following an investigation by the staff of Ferncliff Manor, the Justice Center substantiated the allegation of neglect in a report dated November 25, 2014. The petitioner exercised her right to a hearing before an Administrative Law Judge (see Social Services Law § 494; 14 NYCRR 700.6[a]). The Administrative Law Judge found, upon the hearing, that a preponderance of the evidence showed that the petitioner committed a category three act of neglect (see Social Services Law §§ 493[3][a][i]; [4][c]; 494[1][a]; 14 NYCRR 624.5[j][1][i]; 700.4-700.5). David Molnik, Director of the Administrative Hearings Unit of the Justice Center, adopted the Administrative Law Judge's findings and recommended decision and denied the petitioner's request to amend and seal the substantiated report (see 14 NYCRR 700.13[a]). The petitioner commenced this proceeding against Jay Kiyonaga, individually and as Acting Executive Director of the Justice [*2]Center, pursuant to CPLR 78 to review that determination. By order dated June 28, 2017, the Supreme Court, Westchester County, transferred the proceeding to this Court pursuant to CPLR 7804(g).
In this proceeding, the petitioner seeks to annul the determination of the Justice Center, contending that it was not supported by substantial evidence (see CPLR 7804[g]). Social Services Law § 488(1)(h) defines neglect as "any action, inaction or lack of attention that breaches a custodian's duty and that results in or is likely to result in physical injury or serious or protracted impairment of the physical, mental or emotional condition of a service recipient." Social Services Law § 493(4) sets forth, as relevant, three categories of reports of abuse or neglect perpetrated by a custodian. The particular category designation depends on the nature and severity of the conduct, and each category carries with it different consequences (see Matter of Anonymous v Molik, 32 NY3d 30, 35-36). Category one is limited to a specified list of "serious physical abuse, sexual abuse or other serious conduct" (Social Services Law § 493[4][a]), and category two contains conduct that "seriously endangers the health, safety or welfare of a service recipient" (Social Services Law § 493[4][b]). The third category encompasses all other acts of abuse or neglect that do not rise to the level of conduct as "described in categories one and two" (Social Services Law § 493[4][c]).
At an administrative hearing to determine whether a report of category three neglect is substantiated, the Justice Center is required to establish, by a preponderance of the evidence, that the subject committed abuse or neglect (see Matter of Anonymous v Molik, 32 NY3d at 34). Upon review of such an administrative determination made after an evidentiary hearing, the determination
of the Justice Center must be upheld if supported by substantial evidence (see CPLR 7803[4]; Matter of Williams v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d 1355, 1356-1357).
Here, the determination of the Justice Center was based on substantial evidence. The hearing evidence showed, inter alia, that prior to this incident, the staff at Ferncliff Manor developed a mandatory Individual Plan of Protective Oversight (hereinafter IPOPO) for the student. That IPOPO, which was developed with input from teachers and other professionals, provided, inter alia, "[l]ine of sight - staff is to be within 3 feet of [the student] due to hyperactivity, impulsivity and running," and indicated that the student was at a "HIGH RISK" for "running/wandering away." The IPOPO defined the term "line of sight" as follows: "Staff will ensure the individual is always within their line of sight. This does not mean the staff member needs to be constantly looking at the student/resident, but rather be able to see the person at any given time."
The hearing evidence showed that at the time of this incident, there were four staff members supervising the student and his five classmates, as was required by the policy of the facility: the petitioner teacher and three aides. The petitioner acknowledged that she was not directly watching the student when he absconded, and that she did not see the student abscond from the playground. The student was not located until after he had crossed the playground, breached a fence, run to a nearby street, and encountered the individual who placed him in a vehicle. Notably, the petitioner did not testify that she had directed any of her aides to specifically supervise the student at the time of the incident.
Under these circumstances, substantial evidence supports the determination of the Justice Center that the petitioner committed category three neglect (see Matter of Williams v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d at 1356-1357; see also Matter of Kelly v New York State Justice Ctr. for the Protection of People with Special Needs, 161 AD3d 1344). Therefore, the determination should be confirmed, the petition denied, and the proceeding dismissed on the merits.
SCHEINKMAN, P.J., DILLON, MALTESE and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court