Matter of Preece v New York State Justice Ctr. for the Protection of People with Special Needs (2019 NY Slip Op 07469)





Matter of Preece v New York State Justice Ctr. for the Protection of People with Special Needs


2019 NY Slip Op 07469


Decided on October 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 17, 2019

527995

[*1]In the Matter of Kirsten Preece, Petitioner,
v
New York State Justice Center for the Protection of People with Special Needs et al., Respondents.

Calendar Date: September 6, 2019

Before: Garry, P.J., Egan Jr., Lynch and Pritzker, JJ.


O'Connell and Aronowitz, Albany (Danielle E. Holley of counsel), for petitioner.
Letitia James, Attorney General, Albany (Jennifer L. Clark of counsel), for respondents.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Justice Center for the Protection of People with Special Needs partially denying petitioner's request to amend and seal a report of neglect.
Petitioner is a case manager at Fawn Ridge Senior Living, an adult home licensed by the Department of Health (hereinafter DOH) to provide long-term residential care to certain adults. Relevant to this proceeding, a resident (hereinafter the service recipient) returned to the facility from a post-surgical rehabilitation with a treatment plan that included a directive that she change her sterile surgical bandages each day. The surgical wound required more specialized care, and a doctor prescribed visiting nursing services to complete the dressing changes. When nearly two weeks passed without this nursing care being provided, the service recipient filed a complaint with DOH which, in turn, commenced an investigation. DOH's conclusions were then submitted to respondent Justice Center for the Protection of People with Special Needs, which, in June 2015, substantiated DOH's report, finding that petitioner had committed four incidents of category two neglect and one incident of category three neglect. Upon petitioner's request that the Justice Center's report be amended to unsubstantiated, an Administrative Law Judge (hereinafter ALJ) issued a recommended decision after a hearing finding that the Justice Center had established by a preponderance of the evidence that petitioner committed two incidents of category two neglect.[FN1] Thereafter, a final determination and order was issued adopting the recommended decision. Petitioner commenced this CPLR article 78 proceeding to challenge the determination, which was transferred to this Court (see CPLR 7804 [g]).
The Justice Center is statutorily required to "investigate and respond to allegations of neglect of persons with cognitive or physical disabilities who receive care from licensed facilities" (Matter of Williams v New York State Justice Ctr. for the Protection of People with Special Needs, 151 AD3d 1355, 1356 [2017]). As to the two substantiated findings of neglect, respondents concede, and we agree, that the record does not support the finding that petitioner neglected the service recipient by depriving her of a wheelchair with leg rests. As such, our focus turns to the determination that, between May 1, 2015 and May 28, 2015, petitioner "failed to ensure that [the] service recipient's sterile dressing was changed daily in accordance with physician's orders." The ALJ determined that petitioner was "responsible for ensuring that the treatment plan was followed[,] . . . monitoring the [s]ervice [r]ecipient's progress, . . . ensuring that her wound dressing was changed daily . . . [by] following up with the [s]ervice [r]ecipient to ensure that [she] was either changing the dressing herself, or
. . . arranging for an alternate means for the dressing to get changed." Further, the ALJ concluded that, "[a]t the very least, [petitioner] had the responsibility to ensure that the [s]ervice [r]ecipient had the supplies with which to change the dressing." In sum, the ALJ determined that petitioner never asked the service recipient if she was changing the surgical dressing or whether she had the supplies to do the dressing changes herself.
Where, as here, we review an administrative determination following an evidentiary hearing required by law, we consider whether the determination was supported by substantial evidence (see CPLR 7803 [4]; Matter of Watson v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d 1025, 1026 [2017]). This standard is a "minimal" one that is "less than a preponderance of the evidence, and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks and citations omitted]; see Matter of Perez v New York State Justice Ctr. for the Protection of People with Special Needs, 170 AD3d 1290, 1291 [2019]). "Under this standard, it is the responsibility of the administrative agency to weigh the evidence and choose from among competing inferences therefrom and, so long as the inference drawn and the ultimate determination made are supported by substantial evidence, it is not for the court to substitute its judgment for that of the administrative agency" (Matter of Watson v New York State Justice Ctr. for the Protection of People with Special Needs, 152 AD3d at 1027 [internal quotation marks and citation omitted]; see Matter of Perez v New York State Justice Ctr. for the Protection of People with Special Needs, 170 AD3d at 1291).
The evidence before the ALJ at the hearing included petitioner's case management notes, the notes taken by a DOH nurse (hereinafter surveyor), certain prescriptions and notes written by practitioners. This evidence established that the service recipient was admitted to the hospital for a surgery that included a skin graft. The service recipient was discharged from the hospital to a skilled nursing facility where she remained for a time before she was discharged back to Fawn Ridge on May 1, 2015. The treatment plan upon discharge to the facility included "monitoring and daily dry dressing changes." The submissions demonstrated that the service recipient was seen by her primary care doctor on May 6 and 13, 2015, and that she obtained wound care treatment on May 12, 13, 14 and 15, 2015. Following the May 15, 2015 appointment, a physician from the wound care center (hereinafter the physician) directed that the service recipient's wound dressing changes be completed by visiting nurses. Based on the facility's records, the service recipient was thereafter seen by wound care specialists on May 18, 21 and 29, 2015, by an infectious disease specialist on May 20 and 26, 2015 and by an internal medicine doctor on May 22, 2015.
Pursuant to the physician's May 15, 2015 note, the service recipient was directed to do her own dressing changes until visiting nurse services were established. Petitioner's notes indicate that on May 15, petitioner contacted the physician to request a more detailed prescription in order to complete the visiting nurse order. When the prescription was not delivered as promised on the following Monday, petitioner repeated the request that day and the next before receiving a more specific order from the physician on May 20, 2015, which directed that a visiting nurse change the service recipient's wound dressing three times a week. It is not disputed that, due to insurance coverage issues, the service recipient was not seen by a visiting nurse until June 11, 2015.
When interviewed on May 29, 2015, the service recipient reported that, one week after returning to the facility, the wound became infected, she asked for a wound care appointment and it was made for her. Although the record indicates that the medical providers believed the service recipient was able to complete her own dressing changes, she reported that she was not and that, in any event, she had run out of dressing supplies.
We find that the Justice Center's determination that petitioner committed neglect based on the allegation involving her response to the service recipient's wound care (allegation one) was supported by substantial evidence. In general, the regulations governing Fawn Ridge provide that the service recipient was entitled to "case management services . . . necessary to support [her] in maintaining independence of function" (18 NYCRR 487.7 [g] [2]). As case manager at Fawn Ridge, petitioner's duties included "arranging for [health] services[,]" "assisting the resident in making arrangements to obtain services . . . to maintain . . . the resident's health[,]" and "providing information and referral" (18 NYCRR 487.7 [g] [1]). Petitioner's job description provided that her duties included "[w]ork[ing] with residents to identify their unmet needs[,]" "[n]ot[ing] and notify[ing] the appropriate authority if there is a change in the resident's . . . physical status[,]" "[r]eview[ing] resident's service needs . . . [and] [n]ot[ing] complain[ts] and assist[ing] in their resolution." Neglect is defined as "any action, inaction or lack of attention that breaches a custodian's duty and that results in or is likely to result in physical injury or serious or protracted impairment of the physical, mental or emotional condition of a service recipient" (Social Services Law § 488 [1] [h]).
We are mindful that the record does not indicate that the service recipient ever told petitioner that she was having difficulty with the dressing changes or that she had run out of supplies. Indisputably, however, the service recipient was living at Fawn Ridge because she needed assistance with the activities of daily living. The service recipient reported to the surveyor that she was unable to comply with the wound care treatment plan, and petitioner acknowledged that, from May 1, 2015 until May 29, 2015, she did not ask the service recipient whether she was changing her dressings nor whether she had the supplies necessary to do so. This was true even after it was apparent that the wound was not healing properly and it became necessary to assign regular nursing services to treat the service recipient. At the very least, this demonstrated "lack of attention" by petitioner (Social Services Law § 488 [1] [h]). Moreover, under the facts of this case, we do not agree with petitioner's argument that expert testimony was necessary to support a finding that such inattention was "likely to result in . . . protracted impairment of the [service recipient's] physical . . . condition" (Social Services Law § 488 [1] [h]; see Matter of Kelly v New York State Justice Ctr. for the Protection of People with Special Needs, 161 AD3d 1344, 1346 [2018]).
Next, petitioner argues that substantial evidence does not support the finding that the conduct constituted category two neglect. Generally, the category assigned dictates the penalty and is based on the nature and severity of the substantiated conduct (see Matter of Anonymous v Molik, 32 NY3d 30, 35 [2018]). Category two neglect is conduct that "seriously endangers the health, safety or welfare of a service recipient" (Social Services Law § 493 [4] [b]; see Matter of O'Grady v Kiyonaga, 172 AD3d 1375, 1376 [2019]). In concluding that petitioner's conduct constituted category two neglect, the ALJ relied on the "complications" that "the [s]ervice [r]ecipient suffered an infection in her leg that likely resulted from her dressing not being changed" and that she had to use a wheelchair that was "insufficient for her needs for nearly a month" to conclude that her health was seriously endangered.
As set forth above, the service recipient was seen by medical professionals regularly for wound care treatment during May 2015. Petitioner argues, and respondents do not dispute, that, although regular treatment was necessary, there was no medical evidence in the record that the leg became infected after she returned to the facility in May 2015. Nor, as respondents concede, is there any evidence that her wheelchair was not adequate. As such, we agree with petitioner that the finding that the conduct constituted category two neglect was not supported by substantial evidence. Accordingly, the matter must be remitted to respondent to recategorize the substantiated report of neglect in a manner that is consistent with the foregoing.
Garry, P.J., Egan Jr. and Pritzker, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as determined that petitioner committed neglect stemming from the allegation involving the wheelchair (allegation three); matter remitted to respondent Justice Center for the Protection of People with Special Needs to recategorize the substantiated report of neglect; and, as so modified, confirmed.



Footnotes

Footnote 1: One incident of category two neglect was withdrawn prior to the hearing, one incident of category two neglect was unsubstantiated and the one incident of category three neglect was unsubstantiated.