# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 32
Richard Alcantara, et al.,
  Appellants,
  v.
Anthony J. Annucci, &c., et al.,
  Respondents.

Matthew Freimuth, for appellants.
Blair J. Greenwald, for respondents.

TROUTMAN, J.:

The issue on this appeal is whether the Department of Corrections and Community

Supervision (DOCCS) has a statutory obligation to attempt to secure community-based

"employment, educational, and training opportunities" for the persons confined in its

- 1 -

residential treatment facility (RTF) at Fishkill Correctional Facility (Correction Law § 2 [6]; *see id.* § 73 [2]). We hold that DOCCS's wholesale refusal to secure such opportunities for Fishkill RTF residents constitutes a violation of the statute.

I

Plaintiffs are convicted sex offenders who were confined in the Fishkill RTF while on postrelease supervision (PRS). Since 2014, DOCCS has used the Fishkill RTF to confine convicted sex offenders past the maximum expiration dates of their carceral sentences in circumstances where the offenders are unable to find housing in compliance with the requirements of the Sexual Assault Reform Act (SARA), which bars them from living within 1,000 feet of a school (*see* Executive Law § 259-c [14]). DOCCS derives the authority for this confinement from Penal Law § 70.45 (3), which permits transfer of a person to an RTF for the first six months of PRS, and from Correction Law § 73 (10), which permits use of the RTF as a residence for a person on PRS (*see People ex rel. McCurdy v Warden, Westchester County Corr. Facility*, 36 NY3d 251, 260-262 [2020]). We have concluded that DOCCS has the constitutional authority to confine offenders in this manner (*see People ex rel. Johnson v Superintendent, Adirondack Corr. Facility*, 36 NY3d 187, 192 [2020]).

In 2016, plaintiffs commenced a proceeding seeking one or more injunctions, declaratory relief pursuant to CPLR 3001, and class certification.[1] On defendants' motion

---

[1] Plaintiffs invoked CPLR 7803 (1), alleging that defendants "failed to perform duties enjoined on them by law." Plaintiffs did not seek relief under CPLR 7803 (3), as Judge

to dismiss, Supreme Court dismissed the proceeding in part and converted what remained into an action seeking a declaration that DOCCS's operation of the Fishkill RTF "fails to comply with the statutes governing [RTFs] because it does not offer adequate programming or employment opportunities." In denying class certification, the court reasoned that this converted declaratory judgment action would "adequately protect the interests of similarly situated offenders." Following discovery, defendants moved for summary judgment and a declaration in their favor. Plaintiffs opposed the motion.

The evidence before the motion court established that there were only two kinds of employment opportunity available to Fishkill RTF residents, neither of them in the community. One of the jobs involved labor at the prison storehouse, located on prison grounds less than a tenth of a mile from the gates that surround the prison. The storehouse crew was limited to eight RTF residents, less than a tenth of the RTF's population. The only other employment opportunity made available to RTF residents was in the "porter pool," performing janitorial work alongside members of the general population. Furthermore, a deputy superintendent of Fishkill Correctional Facility testified that there was a work release program under which members of the general population were allowed to go outside prison grounds to work in the community, but that RTF residents were ineligible for the work release program. With respect to internal programming, defendants submitted the affidavit of an offender rehabilitation coordinator (ORC) who facilitated a

Cannataro acknowledges. Even if they had, CPLR 7803 (3) is inapplicable in this converted declaratory judgment action.

program for RTF residents consisting of nine modules including Sex Offender Registration

Act requirements, securing employment, and relapse prevention. She averred that the

program was "specified" to sex offenders and that most of the modules were "adapted to"

or "specifically target" the particular challenges faced by sex offenders.

Supreme Court granted defendants' motion in part, concluding that defendants

established that the internal programming was "at least minimally adequate" to satisfy

DOCCS's statutory obligations, and that plaintiffs failed to raise an issue of fact. The court

entered a declaration to that effect. Otherwise, the court searched the record and granted

partial summary judgment to plaintiffs. The court agreed with plaintiffs that DOCCS failed

to provide adequate community-based opportunities, concluding that DOCCS does not

have the authority to deny "all" community-based employment opportunities to the

residents of the Fishkill RTF, and that the possibility of work in the prison storehouse does

not satisfy DOCCS's responsibility to secure such opportunities. Accordingly, the court

declared that "DOCCS is failing to comply with its obligations under Correction Law § 73

to provide community-based programming and educational, vocational and employment

opportunities in the communities outside the Fishkill Correctional Facility."

The Appellate Division, inter alia, modified the judgment by reversing so much

thereof as granted partial summary judgment to plaintiffs, and it granted defendants'

motion in its entirety. The Court concluded that, although the statute requires DOCCS to

locate RTFs near a community with employment, training, and educational opportunities,

there was no mandate that DOCCS offer such opportunities outside the facility (*see* 203

AD3d 1483, 1484-1485 [2020]). The Court acknowledged that offering community-based

employment, educational, and training opportunities would seem to serve the purpose behind a rehabilitation program but reasoned that DOCCS was in the better position to make that determination (*see id.* at 1485). The Court further concluded that defendants met their burden of establishing that Fishkill RTF's internal programming was adequate, and plaintiffs failed to raise an issue of fact (*see id.* at 1485-1486).

We granted leave to appeal (39 NY3d 906 [2023]).

II

Before proceeding to the merits, we address two threshold matters. First, the appeal is moot because plaintiffs were long ago released from confinement in the RTF (*see Johnson*, 36 NY3d at 195-196). Although the Appellate Division did not address mootness, we conclude that the issues presented in this appeal may be decided under the exception to the mootness doctrine because the issues are substantial and novel, are likely to recur, and will typically evade our review (*see id.* at 196).

Second, we conclude that plaintiffs did not preserve their contention that DOCCS failed to accord them the distinct rights of a person on community supervision for whom DOCCS is using the RTF as a residence under Correction Law § 73 (10), as opposed to the rights of an incarcerated person transferred into the RTF under Correction Law § 73 (1). We have previously acknowledged the difference between those two types of RTF residents (*see McCurdy*, 36 NY3d at 261 & n 5). The nature of the rights of a Correction Law § 73 (10) resident remains an open question (*see id.*), but not one that we have occasion to address in this appeal. The parties do not dispute that plaintiffs were assigned

RTF programming pursuant to Correction Law § 73 (2) and (3). The only challenge properly before us is to the adequacy of that programming.

III

Our fundamental role in interpreting a statute is to effect the intent of the legislature (*see Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205, 208 [1976]). We start with the statutory language, the clearest indicator of the legislative intent, and we construe the statute as a whole and consider its various provisions together and with reference to each other (*see McCurdy*, 36 NY3d at 257). "The literal language of a statute is generally controlling unless the plain intent and purpose . . . would otherwise be defeated, or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the statute's enactment" (*People ex rel. E.S. v Superintendent, Livingston Corr. Facility*, 40 NY3d 230, 235 [2023] [internal quotation marks and brackets omitted]; *see Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018]).

Correction Law § 2 (6) defines an RTF in terms of its external features and the connection between those external features and the population to be confined therein:

> "A correctional facility consisting of a community based residence in or near a community where employment, educational and training opportunities are *readily available* for persons who are on parole or conditional release and for persons who are or who will soon be eligible for release on parole who intend to reside in or near that community when released" (emphasis added).

"[R]eadily available" community-based opportunities are thus essential to a facility's designation as an RTF. By contrast, definitions of other types of correctional facilities lack any focus on outside resources and instead define those facilities in terms of

their internal features (*see e.g.* Correction Law § 2 [8] [defining a "(c)orrectional (c)amp" as a "correctional facility consisting of a camp maintained for the purpose of including conservation work in the program of incarcerated individuals"]; *id.* § 2 [10] [defining a "(g)eneral confinement facility" as a "correctional facility for confinement and treatment of persons under institutional programs oriented to education, vocational training and industry"]).

The statute also provides that DOCCS is "responsible for securing" for RTF residents "education, on-the-job training and employment" opportunities and for supervising residents who are participating in these activities outside the facility (*id.* § 73 [2]). And the statute expressly permits outside access for the purpose of engaging in RTF programming, as RTF residents "may be allowed to go outside the facility during reasonable and necessary hours to engage in any activity reasonably related to [their] rehabilitation and in accordance with" their assigned programs (*id.* § 73 [1]).

The statute, read as a whole, affords DOCCS "leeway to design its RTF programs" (*Johnson*, 36 NY3d at 207). While the plain language of the statute confirms that community-based opportunities are an essential characteristic of an RTF, the statute does not create an individual right to community-based opportunities. This is evident by the legislature's use of the permissive phrase, "may be allowed to go outside," which must be read to afford DOCCS discretion in determining whether an individual RTF resident should be allowed outside the facility to engage in community-based activities (Correction Law § 73 [1]). Moreover, DOCCS's responsibility to RTF residents extends only to securing those

opportunities that it deems "appropriate" (*id.* § 73 [2]); it does not require DOCCS to secure community-based opportunities that would be inappropriate.

Plaintiffs nonetheless argue that at least some RTF residents must be allowed to go outside the facility to engage in employment, educational, or on-the-job training activities. Otherwise, plaintiffs argue, the facility loses its character as an RTF. Defendants counter that the statutory language imposes no obligation whatsoever to secure community-based opportunities, nor does it create a percentage or threshold number of RTF residents who must be able to participate in these activities, leaving the decision entirely to the discretion of DOCCS.

We agree with plaintiffs that DOCCS cannot categorically refuse to attempt to secure community-based opportunities for RTF residents. Crucially, while DOCCS surely has discretion in operating its RTF programs, the record here demonstrates that DOCCS is exercising no discretion with respect to community-based opportunities. DOCCS instead offers only speculation that the opportunities would be difficult to secure for the types of offenders housed in that RTF. To be sure, the statute establishes no percentage or threshold number of RTF residents who must be allowed outside the facility to engage in community-based activities. But defendants incorrectly construe the permissive phrase, "may be allowed to go outside," to empower DOCCS to bar all RTF residents categorically from accessing community-based opportunities without considering whether such opportunities are available or appropriate. A comprehensive reading of the statutory provisions cannot support such a construction. By reading the permissive phrase in isolation, defendants read

the definitional provision out of the statute, eviscerate the character and purpose of the RTF, and undermine the legislative intent.

Our construction is buttressed by the legislative history. When the governor signed the bill that first created RTFs (L 1966, ch 655), he observed that residents "would participate in rehabilitation programs within the [RTF] and would be permitted to go outside the [RTF], under the careful supervision of the Board of Parole, to attend school, to work or to participate in other rehabilitative activities" (Governor's Approval Mem, Bill Jacket, L 1966, ch 655, at 2). Not long thereafter, this enactment was replaced by Correction Law § 73 as part of comprehensive reorganization of the corrections system that provided DOCCS's predecessor department "the flexibility needed for tailored rehabilitative programs" (Budget Report, Bill Jacket, L 1970, ch 476, at 16), and that empowered the department to "utilize treatment programs according to the needs of individual inmates" (Senate Mem in Support, Bill Jacket, L 1970, ch 476, at 3). The Correctional Association of New York praised the bill for creating "flexibility in the handling of inmates, permitting the department to more readily transfer an inmate to an institution based on his particular need rather than statutory requirements" (Letter in Support, Bill Jacket, L 1970, ch 476, at 21). While the references to "flexibility" support that DOCCS has discretion in fashioning its RTF programming, this flexibility is tied to the needs of individual offenders about to reenter the community. This legislative history is directly contrary to DOCCS's construction of the statute, which has given rise to an inflexible policy that does not take individual RTF residents into account.

We do not doubt that the task of securing community-based opportunities for the population at Fishkill RTF, all or nearly all of whom are sex offenders who pose a public safety risk, would be a challenging one. Securing community-based opportunities such as these depend not only on the ready availability of those opportunities in spaces that the offenders may lawfully enter, but also on the willingness of the employers and the educators in the community to employ, train, or educate convicted offenders. But although DOCCS does not have the authority to impress private enterprise into service, there is a big difference between undertaking efforts to secure community-based opportunities for RTF residents where appropriate and deciding categorically that no one in the RTF is permitted to go outside into the community to engage in readily available opportunities. All of these offenders have completed their prison sentences. Due to the enactment and enforcement of SARA, DOCCS is faced with the reality that, while these offenders cannot stay in prison and cannot go home, they must go somewhere, and DOCCS made the decision to house them in an RTF. The solution is not for this Court to redefine RTFs by stripping them of the community-based character and purpose that the legislature established in the statute. As we have noted, DOCCS has significant leeway in operating RTFs, and we have confidence in DOCCS's ability to discharge its public safety function while complying with its statutory obligations.

We thus conclude that DOCCS's wholesale refusal to undertake efforts to secure community-based opportunities for RTF residents constitutes a violation of the statute. Correction Law §§ 2 (6) and 73 (2) and (3) require DOCCS, at a minimum, to undertake

reasonable efforts to secure community-based opportunities for those persons subject to its

RTF programming.[2]

IV

Otherwise, for the reasons stated at the Appellate Division, we agree with

defendants that they are entitled to summary judgment because they demonstrated as a

matter of law that the internal programming at the Fishkill RTF is at least minimally

adequate, and plaintiffs failed to raise an issue of fact (*see* 203 AD3d at 1485-1486).

Statutory requirements for RTF programming within a facility are few and broad. The

statute provides for the assignment of a "specific program" to each resident and that the

program be "directed toward the rehabilitation and total reintegration into the community"

of residents (Correction Law § 73 [3]). The details fall entirely within the discretion of

DOCCS (*see Johnson*, 36 NY3d at 207). We therefore conclude that the Appellate

Division properly affirmed that part of the judgment which entered a declaration in

defendants' favor.

Accordingly, the order insofar as appealed from should be modified, without costs,

in accordance with this opinion and, as so modified, affirmed.

---

[2] The assistant solicitor general stated during oral argument that DOCCS has declined to undertake efforts to secure community-based opportunities for RTF residents, choosing instead to direct its resources to assisting them in finding SARA-compliant housing. Although offering such assistance does not relieve DOCCS of its obligations under Correction Law § 73, successful efforts to find approved housing for RTF residents in an expeditious manner may be relevant to whether efforts taken to comply with Correction Law § 73 are reasonable.

GARCIA, J. (dissenting in part):

Plaintiffs, convicted sex offenders subject to the condition that they reside no less than 1,000 feet from school property or a childcare facility (*see* Executive Law § 259-c [14] [Sexual Assault Reform Act "SARA"]), brought this action alleging, among other

- 1 -

things, that they were being illegally confined to the Fishkill Residential Treatment Facility (RTF) and that Fishkill is not a statutorily compliant RTF.  The sole issue here is whether the Department of Corrections and Community Supervision (DOCCS) was obliged to secure educational, training, and employment opportunities for plaintiffs "that were community based and outside the facility" (*Alcantara v Annucci*, 203 AD3d 1483, 1484 [3d Dept 2022]).  I agree with the majority that the relevant statutes impose no such duty or obligation on DOCCS (*see* majority op at 7-8).  We should therefore affirm the Appellate Division's holding to that effect.  But the majority recasts the issue as whether DOCCS has a "statutory obligation *to attempt* to secure community-based" opportunities (majority op at 1 [emphasis added]), as a way to provide a remedy that plaintiffs do not seek, affords no substantive relief to RTF residents, and offers no guidance for DOCCS going forward in determining what "attempts" must be made.  I dissent.

All or nearly all of the Fishkill RTF residents are sex offenders subject to SARA's special housing condition.[1]  That condition applies only to sex offenders who either committed certain enumerated offenses against a minor or who have been designated a "level three sex offender" under the Sex Offender Registration Act (*see* Executive Law 259-c [14]), meaning "the risk of repeat offense is high and there exists a threat to the

---

[1] In certain circumstances, DOCCS may place sex offenders subject to SARA in RTFs when compliant housing cannot be located (*see People ex rel McCurdy v Warren, Westchester County Corr Facility*, 36 NY3d 251 [2020]; *People ex rel Johnson v Superintendent, Adirondack Corr Facility*, 36 NY3d 187 [2020]; *see also Matter of Gonzalez v Annucci*, 32 NY3d 461, 473 [referencing "the enormous difficulty in finding appropriate housing for sex offenders"]).  As the majority describes the situation, DOCCS faces the "reality" that these sex offenders "cannot stay in prison and cannot go home" (*see* majority op at 10) – if "home" is within 1000 feet of a school or childcare facility.

public safety" (Correction Law § 168-l [6] [c]).  As DOCCS maintains, and the majority

accepts, this is a particularly challenging population to place in "community-based"

opportunities (*see* majority op at 10).[2]

Plaintiffs, who sought class certification for various classes and subclasses, all made

up of RTF residents subject to the SARA residency restriction, brought a CPLR article 78

proceeding alleging, as relevant here, that they were not being afforded such opportunities.[3]

Supreme Court rejected all of plaintiffs' claims with the exception of declaring "that

plaintiffs have demonstrated that DOCCS is failing to comply with its obligations under

Correction Law § 73 *to provide* community-based programming and educational,

vocational and employment opportunities in the communities outside the Fishkill

Correctional Facility environs" (66 Misc 3d 850, 866 [Sup Ct, Albany County 2019]

[emphasis added]).

The Appellate Division, addressing this same issue—whether the statute mandated

that DOCCS provide opportunities outside the facility—reversed, holding that Supreme

Court "erred in granting partial summary judgment … on the claim that DOCCS did not

create an appropriate RTF program outside the confines of Fishkill" (203 AD3d at 1484-

---

[2] These residents must be closely monitored.  In securing community-based opportunities, DOCCS has the statutory obligation to "supervise such incarcerated individuals during their participation in activities outside" the facility "at all times" (Correction Law § 73 [2]; Correction Law § 73 [1] [while residents "may be allowed to go outside the facility[,]" they "shall be at all times in the custody of [DOCCS] and under its supervision"]).

[3] Although plaintiffs originally commenced this action as an article 78 petition seeking declaratory and injunctive relief, Supreme Court converted the proceeding to a declaratory judgment action.

1485).  The majority agrees that there is no statutory duty or obligation to provide such programming and that the statute affords discretion and flexibility to DOCCS (*see* majority op at 7-9).  But instead of confirming the Appellate Division's grant of summary judgment to defendants dismissing the claim, the majority fashions new relief in the form of mandating that DOCCS "undertake reasonable efforts to secure community-based opportunities for those persons subject to RTF programming" (majority op at 10-11).

This case concerns the difficulty in placing sex offenders subject to the SARA housing condition in community-based jobs and whether the relevant statutes require DOCCS to do so.  The key question—can DOCCS categorically refuse to attempt obtaining community-based opportunities for the subset of residents composed of high-risk sex offenders subject to SARA?—goes unanswered.  Under the majority's new rule, it is unclear whether DOCCS must (1) attempt to locate community based-opportunities generally and then determine if the provider will accept sex offenders subject to SARA; or (2) attempt to find specific opportunities for that group of sex offenders.  And if it applies generally, can DOCCS make the discretionary determination that community-based opportunities are not appropriate given the high risk to the community posed by these sex offenders as a subgroup of RTF residents (*see* majority op at 7 ["DOCCS's responsibility to [] RTF residents extends only to securing those opportunities that it deems 'appropriate'…; it does not require DOCCS to secure community-based opportunities that would be inappropriate"])?

It might appear that the majority's amorphous holding is harmless error.  DOCCS, after all, must only make reasonable efforts to secure community-based opportunities that

it "deems 'appropriate' " (*see* majority op at 8, citing Correction Law § 73 [2]), and that obligation to attempt to do so is not enforceable by any individual resident (*id.* at 7). But what is an "appropriate" community placement for a sex offender, particularly one subject to the condition that prevents the offender from residing within 1000 feet of a school? Is this purely a subjective standard that courts must defer to in providing DOCCS with "flexibility" to run the RTF (*see* majority op at 9)? Can a class of residents subject to SARA bring a suit to enforce such a vague directive? Two things are certain to follow today's ruling: uncertainty and litigation.

CANNATARO, J. (dissenting in part):

Every Judge of this Court appears to agree that the inclusion of community-based opportunities within RTF programming is ultimately a matter within DOCCS's discretion (majority op at 7-8; Garcia, J., dissenting op at 2; *see also Matter of Doe v Coughlin*, 71

NY2d 48, 59 [1987] [recognizing courts' traditional deference "to the discretion of correction officials on matters relating to the administration of prison facilities and rehabilitation programs"]). Judge Garcia admonishes the majority for creating a new and ill-defined duty on the part of DOCCS " '*to attempt* to secure community-based' opportunities" (Garcia, J., dissenting op at 2, quoting majority op at 1), a criticism with which I fully agree. I write separately to express my view that the creation of a "reasonable efforts" standard is unnecessary because the appropriate standard for reviewing DOCCS's exercise of discretion is well settled and not unique to this area of administrative law. When DOCCS's policies and determinations with respect to community-based programming are challenged, the proper question is whether they are "affected by an error of law or [are] arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). The fact that plaintiffs litigated this dispute on a different theory—pleading that defendants "failed to perform a duty enjoined upon it by law" (CPLR 7803 [1]), and then pursuing a declaratory judgment to that effect—does not authorize this Court to create a different mechanism to avoid abuses of discretion.

There was no error of law here. As everyone agrees, DOCCS had no absolute duty to provide community-based opportunities. Had the legislature intended to require DOCCS to undertake "reasonable efforts" to secure community-based opportunities for RTF residents, it would have said so in plain language (*see e.g.*, Correction Law § 137 [6] [j] [vi]). Instead, the Correction Law provides that DOCCS is "responsible for securing *appropriate* education, on-the-job training and employment" for RTF residents, with no specific mention of community-based activities (*id.* § 73 [2] [emphasis added]). This

careful wording can only be construed as a deliberate choice by the legislature to leave the provision or denial of community-based opportunities to the discretion of DOCCS (subject to judicial review), not as an invitation for the judiciary to append additional duties that do not appear on the face of the statute (*see e.g.*, *People v Jackson*, 87 NY2d 782, 788 [1996]; McKinney's Cons Laws of NY, Book 1, Statutes § 74).

Nor does the record establish that DOCCS's refusal to seek or approve community-based opportunities over the relevant period was irrational or an abuse of discretion. Preliminarily, it must be appreciated that the entire population (or close thereto) of the RTF during this time consisted of high-risk sex offenders (*see* majority op at 2, 10; Garcia, J., dissenting op at 2-3). If, as DOCCS has suggested, the Department rationally believed that efforts to secure community-based opportunities "appropriate" for high-risk sex offenders would be futile or would frustrate more efficient community reintegration strategies—such as helping sex offenders secure SARA-compliant housing and leave confinement entirely—it would be difficult to characterize that determination as either irrational or an abuse of discretion, especially considering that DOCCS "secur[ed] appropriate education, on-the-job training and employment" *inside* the facility (*see* Correction Law § 73 [2]).

Since CPLR 7803 (3) prevents DOCCS from adopting policies that are arbitrary and capricious or abuses of discretion, there is no need for the majority's creation of a duty of "reasonable efforts." By mandating such efforts, the majority is prescribing and limiting DOCCS's discretion rather than reviewing it. I would accordingly affirm the order of dismissal. The majority's well-intentioned but ambiguous decision casts unnecessary

doubt on whether DOCCS can make rational decisions with respect to RTF programming

in the future, and for that reason, I respectfully dissent.

Order insofar as appealed from modified, without costs, in accordance with the opinion
herein and, as so modified, affirmed. Opinion by Judge Troutman. Chief Judge Wilson
and Judges Rivera and Halligan concur. Judge Garcia dissents in part and votes to affirm
in an opinion, in which Judge Singas concurs. Judge Cannataro dissents in part and votes
to affirm in a separate dissenting opinion.

Decided April 25, 2024